**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-03450-RBJ

JESSICA PECK,

    Plaintiff,

v.

MICHELLE BARNES, in her official capacity as Executive Director of the Colorado Department of Human Services;
BETH McCANN; in her official capacity as the District Attorney of the Second Judicial District, State of Colorado, and;
CITY AND COUNTY OF DENVER, A Colorado Home Rule City and County,

    Defendants.

**FIRST AMENDED COMPLAINT**

Plaintiff Jessica Peck, by and through her attorneys David A. Lane and Thomas B. Kelley of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her First Amended Complaint and Jury Demand as follows:

**INTRODUCTION**

1.    Plaintiff Jessica Peck is an attorney licensed to practice law in the State of Colorado. Plaintiff represents and advocates for the individual rights of parents and children, both in Colorado's family courts, under Title 14 of C.R.S. and in the state's juvenile courts, under Title 19 of C.R.S.  In that capacity, she has handled several cases involving the untimely deaths of young children.  In her work, Ms. Peck routinely comes into the possession of child abuse reports, records and information prepared by officials responsible for the protection of children.  Reports and records that come into

1

Plaintiff's possession are subject to broad and vague non-disclosure provisions under COLO. REV. STAT. § 19-1-307 ("Section 307"), that criminalizes any release of such information.

2.    Plaintiff has made statements to the press regarding the misconduct of officials charged with the protection of children using information derived from records and reports made secret by Section 307. Specifically, she has alleged that certain officials have issued false reports concerning her clients, thereby putting such clients at legal jeopardy and at risk of losing parental custody.  As a result, Plaintiff has been threatened with prosecution for violating Section 307.  Plaintiff has not disclosed, and does not intend to disclose identifying information concerning the child abuse victims or family members, but does wish to continue to disclose publicly the contents of child abuse reports and records to the limited extent necessary to alert the public to misfeasance and malfeasance on the part of government officials.  As a result of Section 307 and threats of prosecution thereunder, Plaintiff cannot do so without fear of prosecution.  As such, Plaintiff's right to free speech is significantly chilled and therefor abridged, as would be the speech of any reasonable person in similar circumstances.

3.    This is a civil rights action for declaratory and injunctive relief, as well as fees and costs arising under 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. Section 2201 *et seq.*, due to Defendants' violations of Plaintiff's rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and Article II Section 10 of the Constitution of Colorado. This action challenges the facial constitutionality of COLO. REV. STAT. § 19-1-307(1) (2019) and COLO. REV. STAT. § 19-1-307(4) (2019).

These criminal prohibitions of Section 307 are facially overbroad and void-for-vagueness under the Federal and State constitutions.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to 42 U.S.C. § 1983. Jurisdiction and the legal basis for Plaintiff's claims for attorney's fees and costs is conferred by 42 U.S.C. § 1988. This Court has jurisdiction over the claim arising under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391.

## PARTIES

6. Plaintiff, Jessica Peck, is a citizen of the United States and State of Colorado during the relevant times described herein.

7. Defendant, Michelle Barnes, is the Executive Director of the Colorado Department of Human Services. Executive Director Barnes' duties include administration of the Dependency and Neglect provisions of the Colorado Children's Code, including § 19-1-307, C.R.S. Executive Director Barnes is sued in her official capacity.

8. Defendant, Beth McCann is the District Attorney for the Second Judicial District, which is constituted by the City and County of Denver. The District Attorney for the Second Judicial District is the chief law enforcement officer of the District and is charged with the duty and responsibility of enforcing the criminal laws of the State of Colorado, through the prosecution of criminal charges alleging the violation of such

laws, including § 19-1-3207(4), C.R.S., which recognizes a crime punishable as a misdemeanor.  Ms. McCann is sued in her official capacity.

9. Defendant City and County of Denver ("the City") is a Colorado Home Rule City and County pursuant to Article XX, §§ 1 and 2 of the COLORADO CONSTITUTION.  The City, through its Office of the City Attorney, is responsible for prosecution of crimes punishable as petty offenses, including the crime recognized under §19-1-307(1)(c), and, through its Department of Human Services ("County Department"), is responsible for administration of the County Department's duties under the Dependency and Neglect provisions of the Colorado Children's Code, including §19-1-307, C.R.S.

10. All above Defendants are proper parties to litigation that challenges the facial constitutionality of a state criminal statute that they administer and/or enforce.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Interest

11. Plaintiff, Jessica Peck, is an attorney licensed to practice law in the state of Colorado who specializes in family law.

12. Ms. Peck frequently comes into possession, through lawful means, of reports and records of suspected child abuse that implicate her clients.  These reports and records are prepared by social workers and other officials ("Social Workers") employed by the Department of Human Services ("County Department") that is established pursuant to law in for each Colorado county or, in some cases, for a district of more than one county.

13. On occasions, Ms. Peck finds that such reports and records contain factually false information detrimental to her clients that is presented as fact but in reality is based on rank speculation, dishonestly assumed facts, or even outright fabrication. Ms. Peck believes it is her right and civic obligation to publicly call out the public officials responsible for such misconduct but finds herself chilled and precluded from publicly challenging such misconduct by the criminal sanctions of Section 307.

**B.     Statutory Scheme Subject to Challenge**

14. With the exception of custody matters involved in dissolution of marriage proceedings, the rights, duties, and obligations of parents, children care-givers, law enforcement officers, Social Workers and others charged with care and protection in children, are governed by the Colorado Children's Code, Sec. 19-1-101 *et seq.*, and in particular Article 3 thereof, which addresses matters of child dependency and neglect.

15. Social Workers employed by County Departments are authorized and empowered to conduct investigations of homes in which a child resides who is a suspected victim of child abuse or neglect or otherwise in need of protection and to recommend remedies including change of custody of a child in such circumstances. Social Workers routinely prepare records and reports of such investigations and their interactions with members of the family or families involved that are relied upon by decision makers in the system of child protection under the Children's Code.

16. The system of information gathering, record keeping, and reporting on matters of child dependency and neglect pursuant to the Children's Code, including the

conduct of responsible officials as reflected in such records and reports, is encapsulated in a shell of secrecy from public view by Section 307.

17. Subsection (1)(a) of Section 307 provides that "reports of child abuse or neglect and the name and address of any child, family, or informant or any other information contained in such reports shall be confidential and shall not be public information."

18. Subsection (1)(b) provides a limited exception:

> Disclosure of the name and address of the child and family and other identifying information involved in such reports shall be permitted only when authorized by a court for good cause. Such disclosure shall not be prohibited when there is a death of a suspected victim of child abuse or neglect and the death becomes a matter of public record or the alleged juvenile offender is or was a victim of abuse or neglect or the suspected or alleged perpetrator becomes the subject of an arrest by a law enforcement agency or the subject of the filing of a formal charge by a law enforcement agency.

19. Subsection (1)(c) declares: "Any person who violates any provision of this subsection (1) is guilty of a class 3 petty offense" punishable by a fine of not more than $300.

20. Thus, subsection (1) of Section 307 criminalizes any violation of the declared "confidential" and "not public information" status of any information contained in any record or report including, but not limited to, names and addresses and other identifying information; subsection (2) authorizes disclosure of the latter (but not other information in a record or report) on the basis of a judicial finding of "good cause" (that is not otherwise defined) and exempts from the disclosure prohibition, *inter alia*, cases in which a child has died and the death is of public record.

21.     Subsections (2), (2.3), (2.5) and (3) authorize access to records and reports for limited categories of official or therapeutic purposes.

22.     Subsection (4) then adds greater clarity and jeopardy to violations of the secrecy imposed by Section 307:

> (4) Any person who improperly releases or who willfully permits or encourages the release of data or information contained in the records and reports of child abuse or neglect to persons not permitted access to such information . . . commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S.

23.     The punishment referenced above in Section 307(4) is imprisonment for six to eighteen months, a fine of $100 to $5,000, or both.  No guidance is provided as to when an official charging a violation of Section 307 should choose the lesser sanction provided by subsection (1) or the more severe punishment provided by subsection (4).

24.     The Colorado Court of Appeals has authoritatively interpreted the language of subsection (4) of Section 307 to preclude release or public discussion of any information contained in a covered report or record, whether or not such communication discloses information identifying a child, a family member, or other person involved in a non-official capacity.  *See Gillies v. Schmidt*, 38 Colo. App,233, 556 P.2d 82, 86 (Colo. App. 1976).

**C.     Abridgment of Plaintiff's Free Speech Rights.**

25.     Ms. Peck represented the family of Jamel Myles, a nine-year-old who tragically took his own life in the late summer of 2018, after alleged bullying over his sexual orientation.

26.     While representing that family, Ms. Peck discovered that the Denver Human Services Social Worker's reporting on the case contained material errors and

7

portrayed the actions and behavior of the child's surviving siblings and mother in a demonstrably false and derogatory manner.

27. In January 2019, 5280 Magazine, a local media publication, published an article regarding the death of Jamel and possible misconduct by officials in Denver Public Schools and Denver Human Services, the County Department for the City and County of Denver. A copy of that article is attached as **Exhibit 1**.

28. Shortly after the 5280 article was published, officers from the Denver Police Department inquired of 5280 Magazine staff seeking to learn who released Jamel's records.

29. Police officers also contacted Arthur Trass—a former Denver Human Services Social Worker who "blew the whistle" on his department's misconduct in the 5280 article—demanding to know who released Jamel's record.

30. Police officers also contacted Ms. Peck's client demanding the same information.

31. In an unrelated engagement, Ms. Peck represented a Glendale woman who retained Ms. Peck to protect her interests before the Denver Department of Human Services in the context of an investigation involving the woman's young daughter. While the woman was never accused of child abuse of any kind prior to DHS contact, the woman's former spouse and father of the daughter, one John Affourtit, was then awaiting trial in an ongoing case stemming from the death of another young child occurring while the daughter was in his care.

32. While representing this individual, Ms. Peck again discovered that the same Denver Human Services Social Worker, who submitted false reports in the Myles

8

matter, also submitted falsely derogatory reports in the case of the Affourtit child concerning her client.

33. On January 15, 2019, Ms. Peck participated in an interview with Westword, a local media organization. In that interview Ms. Peck discussed how Denver Human Services Social Workers fabricated allegations and abused their power. A copy of the resulting article in Westword is attached as **Exhibit 2**.

34. Soon after the Westword interview was published, Ms. Peck was issued a gag order in the case, a copy of which is attached as **Exhibit 3**.

35. The gag order, Exhibit 3, reads: "The Court has become aware that Counsel for Respondent Mother… may have disclosed information to a non-party in violation of § 19-1-307(1)(a), C.R.S. Disclosure of identifying information is a dependency or neglect proceeding is a criminal offense pursuant to § 19-1-307(1)(b), C.R.S.  This Order will serve as notice to all parties that any identifying information pertaining to this dependency and neglect proceeding shall be kept confidential in accordance with § 19-1-307(1)(a) and § 19-1-303."

36. Ms. Peck did not disclose identifying information pertaining to a child, a family member, or other non-official person named in a child abuse record or report. Ms. Peck's comments in the article were limited to criticism of official conduct.

37. As a result of the gag order and the threat of prosecution, Ms. Peck believes she cannot disclose governmental abuse when it relates to a child abuse report or record. Any reasonable person in the same circumstances would harbor the same belief.  As a result, Ms. Peck's speech has been, and remains, chilled and abridged.

**D.     Standing and Entitlement to Relief.**

38.     By virtue of the clear and unambiguous language of subsection (4) of Section 307 and the various threats of enforcement of that Section that have been communicated to Ms. Peck, and, as she is fully aware, to her clients and others, Ms. Peck is, and any reasonable person in her position would be, chilled, deterred and precluded from expressing her honestly held beliefs regarding official misconduct in the handling of matters of child abuse and neglect.  Ms. Peck therefor has standing to bring this constitutional challenge to Section 307.

39.     The deprivation of a First Amendment right of free speech is an injury that is irreparable, not compensable in damages and is appropriate for injunctive relief.

40.     This case presents a real case or controversy between the parties appropriate for a declaratory judgment pursuant to 28 U.S.C. § 2201.

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**42 U.S.C. § 1983 - First Amendment - Violation of Free Speech Rights and Overbreadth**

41.     All allegations set forth previously are hereby incorporated into this claim by reference as though set forth fully herein.

42.     Ms. Peck's communications critical of government conduct as reflected in child abuse records and reports is political speech that is protected by the First Amendment.

43.     Without violating any law, Ms. Peck has acquired and will acquire information from child abuse records and reports that informs her speech regarding official conduct.  When truthful information of public concern it obtained by a would-be speaker lawfully, her utterance of that information may not be sanctioned or limited except to serve a governmental interest of the highest order, and only by regulation that

is narrowly tailored and strictly necessary to serve that interest. *See Bartnicke v. Vopper,* 532 U.S. 514, 527-28 (2001). Section 307 is a content-based regulation of speech that unduly restricts speech that is critical of government officials and is not narrowly tailored to serve a government interest of the highest order.

44. Indeed, the complete encapsulation of misconduct of Social Workers and other responsible officials from public accountability only enables and encourages the very misconduct of for which Ms. Peck would call them out. It flouts the General Assembly's own declaration that "absolutely confidentiality" of such information "may put other members of the public at risk of harm," and that public disclosure "may result in serving the best interest of the child and may be in the public interest." *See* Sec. 19-1-302, C.R.S. (legislative declaration).

45. Section 307 is overbroad and violates the rights of Ms. Peck and other speakers who would disclose official misconduct as reflected in child abuse reports and records, even when they do so only as reasonably necessary to expose official incompetence or wrongdoing, or without identifying any child, family member, or other non-official involved. Section 307, and specifically Section 19-1-307(1) and (4), C.R.S. are content based regulations of speech that violate the well-established overbreadth doctrine under the First Amendment and should be struck by this Court as unconstitutional. *See Gooding v. Wilson*, 405 U.S. 518, 520-23 (1972).

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - First and Fourteenth Amendments - Vagueness

46. All allegations set forth previously are hereby incorporated by reference into this claim as though set forth fully herein.

47. The prohibitions of Sections 307(1) and 307(4) are vague and not clearly defined; they offer no clear and measurable standard by which Ms. Peck and others can act lawfully and provide no explicit standards for application by law enforcement officers. *See City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)

48. Subsections 307(1) and 307(4) provides no notice to a would-be speaker nor any direction to law enforcement officials as to when a speaker's words are to be charged under the relatively harsh provision of section 307(4) or the comparatively mild provisions of section 307(1).

49. Further, subsections 307(1) does not explain non-disclosure exemptions when there are multiple children referenced in one child abuse report. For example, in the case of the Myles family, the deceased child's report (which is exempt under subsection 307(1)(b) due to the public record death of a child) contains hundreds of pages that reference both two living sisters who are children. The statute does not indicate whether releasing the deceased child's report or information from it violate the law because it may disclose (1) information contained in the sisters' reports or (2) information identifying the sisters.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that this Court enter judgment in their favor and against Defendants, and grant:

(a) A permanent injunction enjoining the defendants from enforcing any of the criminal provisions of Sec. 19-1-307(1) and (4), C.R.S. (2019).

(b) A declaration that criminal prohibitions and sanctions of Sec. 19-1-307(1) and (4), C.R.S. are unconstitutional on their face and therefor void.

    (c)    Attorney's fees and the costs associated with this action and expert witness fees on all claims as allowed by law;

    (e)    Any further relief that this court deems just and proper, and any other relief as allowed by law.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated this 29th day of January 2020.

                              KILLMER, LANE & NEWMAN, LLP


                              */s/ Thomas B. Kelley*
                              David A. Lane
                              Thomas B. Kelley
                              1543 Champa Street, Suite 400
                              Denver, Colorado 80202
                              (303) 571-1000
                              (303) 571-1001 - facsimile
                              dlane@kln-law.com
                              tkelley@kln-law.com

                              Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I certify that on this 29th day of January 2020 I filed this **FIRST AMENDED COMPLAINT** via CM/ECF, and CM/ECF will generate a Notice of Electronic Filing to the following:

Andrew D. Ringel
Kendra Smith
Hall & Evans, LLC
1001 17th Street, Suite 300
Denver, Colorado 80202
ringela@hallevans.com
smithk@hallevans.com

LeeAnn Morrill
First Assistant Attorney General
Public Officials Unit
Office of the Attorney General
1300 Broadway, 6th Floor
Denver, Colorado 80203
leeann.morrill@coag.gov

                                          */s/ Charlotte Bocquin Scull*
                                          Paralegal – Killmer Lane & Newman, LLP