IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03450-RBJ

JESSICA PECK,

      Plaintiff,

v.

MICHELLE BARNES, in her official capacity as Executive Director of the
Colorado Department of Human Services;
BETH McCANN; in her official capacity as the District Attorney of the Second
Judicial District, State of Colorado, and;
CITY AND COUNTY OF DENVER, A Colorado Home Rule City and County,

      Defendants.

---

## DECLARATION OF JESSICA PECK

---

I, Jessica Peck, under penalty of perjury, hereby declares:

1.     I am an attorney licensed to practice law in the State of Colorado.  I have personal knowledge of the facts recited in this Declaration.

2.     In my private practice of law, I represent and advocate as a private attorney for the rights of parents and other interested persons who become involved in investigations of suspected child abuse and neglect by Colorado local Departments of Human Services ("County Departments") and in dependency and neglect matters in Colorado juvenile courts under the Colorado Children's Code, Title 19 of the Colorado Revised Statutes.

3.     Social Workers employed by County Departments are authorized and

empowered to conduct investigations of homes in which a child resides who is a suspected victim of child abuse or neglect or otherwise potentially in need of protection and to recommend and initiate remedies including a dependency and neglect action, in which the court may order removal of a child from the parental home, change of custody, or both of a child in such circumstances.

4.      Social Workers routinely prepare records and reports of such investigations and their interactions with and observations of members of the family or families involved. Such reports are filed with and considered by a courts in matters brought before a them pursuant to the Children's Code and are relied upon by Courts and other decision makers in the system of child protection under the Children's Code.

5.      In my work, I lawfully come into possession of child abuse or neglect reports, records, and information prepared by officials responsible for the protection of children. I receive such records and reports through discovery in litigation and before and in the absence of litigation from or with permission of clients who are the subject of the records or reports for purposes of legal counseling.

6.      The Colorado Department of Human Services (CDHS) promulgates regulations to effectuate its functions and responsibilities. Regulations so promulgated related to child welfare and protection are codified in the Colorado Code of Regulations, 12 CCR 2509-7, referred to by CDHHS and other users as "Volume 7". Required steps and record keeping by County Departments in investigations and assessments of a child's circumstances appear in 12 CCR §§ 2509-7.100 et seq., Referral and Assessment and in 12 CCR §§7.200 et seq. Program Areas, Case Contacts, and

Ongoing Case Requirements. Further record-keeping requirements, and rights and responsibilities of persons subject to investigations, and confidentiality are addressed in 12 CCR §§2509-7.600 et seq., County Responsibilities, Staff Training and Qualifications, Client Rights and Confidentiality.

7.     Pursuant to Section 19-3-313.5, C.R.S., CDHS caused to be created a computerized system of record keeping of records and reports required in investigations of cases suspected child abuse or neglect that is referred to in Volume 7 as the "State Automated Case Management System". The same law requires CDHS Board of Human Services to promulgate rules governing "the release of information contained in records and reports of child abuse or neglect…to assure compliance with" any "state or federal law relating to confidentiality of such records and reports." § 3-313.5(4). The rules are to address "[t]he consequences of improper release of information related to" such records and reports. §3-313.5(4)(e).

8.     The Regulations so promulgated by CDHS require County Departments to adopt a process for releasing records to family and other interested parties that includes a "[w]arning regarding the sharing of information by the requestor."  12 CFR 2509 §7.605.24G.

9.     The County Departments lack uniformity and consistency in their choices of language of the required warning. The Denver County Department's plan for allowance of access to entitled persons provides that "the client, former client, or his/her attorney will be required to sign a Confidentiality Advisement that informs the client the it is his/her responsibility to safeguard the confidential information in accordance with

applicable state and federal law."  The advisement forms signed by clients or their attorneys provides, "I understand that the Denver Department of Human Services has no control over information once it has been disclosed to a third party, and cannot protect the information if I release the information to any third parties." See Ex. 1 hereto. The form used by the Douglas County Department provides under the title, "**Confidentiality Statement," "**The Department requires an Acknowledgment of Confidentiality (see below) to be signed before releasing any record." The form continues, reciting: "C.R.S. 19-1-307(4) Any person who improperly releases or who willfully permits or encourages the release of data or information contained in the records and reports of child abuse or neglect to persons not permitted access to such information by this section or by section 19-1-303 commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501  Please ensure that should you release records, it is in accordance with legal confidentiality guidelines and privilege requirements." See, Exhibit 2, attached.

10.    A solid majority of Social Workers I come into contact with are honest, credible and diligent advocates for vulnerable children. I am deeply concerned, however, as to the concerning frequency of DHS records and reports showing lapses, neglect, or misconduct on the part of Social Workers, including, false and at times, even fabricated information detrimental to my clients or challenging their parenting skills on improper grounds. I believe it is my right and duty to publicly call out the public officials and employees she believes are responsible for such misconduct.

11.    I have made and desire in the future to make public statements, including through the press, calling out public officials and public employees when they have

4

issued materially false or improper reports concerning my clients.

12.     In January 2019, I became aware of a report filed by the Denver Social Worker assigned to a dependency and neglect matter pending in /Denver Juvenile Court that I believe fabricated derogatory information concerning the child's mother, my client, and improperly criticized my client's parenting.

13.     I gave an interview to a reporter for the weekly newspaper, *Westword*, in which I discussed my time-sensitive concerns about the case and the Social Worker conduct in question.  Decisions resulting in removal of a child from a home are commonly made with speed that eclipses that of the processes listed in ¶ 41 of the parties' Joint Stipulation of Facts. The resulting article, Exhibit 2 hereto (EFC 24-2) was published by *Westword*. In that interview, I did not disclose for publication any information that identified the child or my client by name.  The father, John Affourtit, had already been already identified in public records, and through local media reports.

14.     A court hearing was convened in the matter in question on January 18, 2019, immediately after publication of the article.  No mention of the article was made during the hearing. At the conclusion of the hearing, I left the courtroom while the assigned social worker remained.  Before I left the courthouse, the presiding judge's clerk called out to me down the hall, at which point I was served with an Order warning me of penalties for violating §19-1-307.  I believe the order may have been requested by the assigned Social Worker in my absence because of my criticism of her work in the article. The Order read:

> The Court has become aware that Counsel for Respondent Mother . . . may have disclosed information to a non-party in violation of § 19-1-307(1)(a),

C.R.S.  Disclosure of identifying information in a dependency or neglect proceeding is a criminal offense pursuant to § 19-1-307(1)(b), C.R.S. This Order will serve as notice to all parties that any identifying information pertaining to this dependency and neglect proceeding shall be kept confidential in accordance with § 19-1-307(1)(a) and § 19-1-303.

15.     I also represented the family of Jamel Myles, a young boy who took his own life the first week of Fourth Grade, in August, 2018, where he was enrolled at a Denver Public School. In the immediate aftermath of Jamel's death, the tragedy gained immediate, international attention, and through no efforts of my own, has been featured by UK's Daily Mail, *The New York Times*, CNN and others. This case was of public interest due to Jamel's shockingly young age and it was publicly known that the matter was the subject of a Title IX federal investigation due to rampant allegations of homophobic bullying. I gave an interview to a reporter for *5280*, a monthly magazine published in Denver and throughout Colorado, that contributed to an article published in the January 2019 edition of 5280, which is Exhibit 1 to the First amended Complaint.  EFC 24-1.  Over the course of my communications, over many months, with various case witnesses, Denver Public Schools representatives and DHS surrogates, I became very concerned about increasing pressure by various parties attempting to silence Jamel's survivors concerning controversial events leading up to his death.  As just one example, DPS, acting in ongoing coordination of Denver DHS, held a townhall meeting where parents of Jamel's classmates were wrongly led to believe that Jamel's mother had personally made credible death threats against the school community (notably, DPS made no announcement that the mother was ultimately

cleared of the allegations).

16.     During this challenging period, I am informed that at least one Denver Police detective known to the Myles family contacted Jamel's mother and grandmother at home, and by phone, inquiring as to possible sharing of DHS records specific to Jamel and his siblings.  Around this same time, the 5280 reporter, Robert Sanchez, indicated (and more recently re-confirmed) that the detective, known to Sanchez and the family as he had attended Jamel's funeral, was seeking a search warrant to help determine how Sanchez had obtained Jamel's DHS records. I did not personally observe these contacts but have confidence in the reliability of the informants.

17.     On occasion, I am retained by parents seeking legal representation in the aftermath of losing a child to suicide.  In such cases, it is critical to examine trends and variables between cases and experiences.  In some cases, this means that a DHS caseworker's name can pop up in multiple cases.

18.     Of note, the DHS caseworker assigned to investigate the Jamel Myles' death scene was the same caseworker who first made contact with the mother of John Affourtit's daughter, in the early morning hours surrounding the child death investigation in that case.  Both sets of families allege wrongdoing by this same caseworker.

19.     Of note, a plain reading of §307 allows for disclosure of a child's DHS reports if the child dies as a result of child abuse.  This statute was written at a time when child suicide was almost unheard of and the statute offers no stated

exception for release of such records if a child dies by suicide, meaning that if one of Jamel's parents had ended his life, the reports could be released.  Because Jamel took his own life, however, the right of his parents, or any parent suffering the loss of a child by suicide, to share records as a means to improve agency transparency remains ambiguous.  As parents across Colorado investigate root causes of the state's so-called youth suicide epidemic, the ability of parents to share concerns, and documentation of concerns surrounding DHS history, can become critically important.

20.     I believe that §307 prohibits my public criticism of government for abuses of its authority by citing, quoting, repeating or paraphrasing information contained in a child abuse report or record, which I believe is essential to the credibility of any criticism I would voice to the public or the press concerning responsible government officials. As a result, my speech has been, and remains, chilled and abridged by the criminal liability provisions of the Children's Code, Section 19-1-307, C.R.S.

21.     I am aware that: the Colorado Court of Appeals has construed Section 19-1-307(4), C.R.S., to criminalize any public disclosure of any information contained in chile abuse records and report, regardless of whether it identifies a child or family member; that the State of Colorado has committed the State to enforcement of § 19-1-307(1) and (4) as a condition of receipt of federal grant funds; that CDHS Executive Director Barnes has acknowledged that, as a condition of condition this "critical federal funding," Colorado "must have in effect

*and enforce* a state law or statewide program that includes methods to preserve the confidentiality of child abuse and neglect reports and records," and that §307 *"is Colorado's law that satisfies that condition"* (See Scheduling Order, EFC  47 at p. 4(emphasis added); that the  Governor of Colorado has certified to the U. S. Department of Health and Human Services Colorado's commitment to enforcing §307 as required by 42 U.S.C. §5106a(b)(2)(B)(vii), and that CDHS has renewed that certification on an annual basis; that District Attorney McCann has made a similar declaration as to §307(4); that CDHS regulations warn of criminal penalties for violation of 307(4) for release of "data or information related to abuse or neglect contained in the state automation case management system to persons not permitted access to such information," 12 CCR 2509-7.605.5; that some County Departments warn parents and others entitled to access to child abuse record and reports that disclosure unauthorized persons is punishable under §307(4).

22.     Based upon what I have said in ¶¶ 12-17 above, I believe I face a serious and credible threat of prosecution under §307 should I say anything that violates it which, upon conviction, would result in not only criminal penalties but also potential suspension or revocation of my license to practice law. I am not willing to disrespect the rule of law nor to risk those outcomes.

23.     I have neither sought nor received a court order authorizing disclosure for good cause of contents of child abuse or neglect reports prior to making statements to the press or public. I have made no formal complaint seeking relief from official misconduct to any public agency. Due to the time-sensitive

nature of the circumstances surrounding the families I represent, I firmly believe that the alleged relief afforded under these delayed processes are ineffectual in comparison to the beneficial effects of contemporaneous public scrutiny of questionable official conduct.

Dated this 22d day of June 2020.

Jessica K. Peck, Esq.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of June 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Bianca E. Miyata
Aaron Pratt
Anita Schutte
Office of the Attorney General
1300 Broadway, 6th Floor
Denver, Colorado 80203
bianca.miyata@coag.gov
aaron.pratt@coag.gov
anita.schutte@coag.gov
*Counsel for Defendant Michelle Barnes in her official capacity*

Melanie Lewis
Robert A. Wolf
Amy J. Packer
Assistant City Attorney
Denver City Attorney's Office
Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, CO 80202
Melanie.lewis@denvergov.org
Robert.wolf@denvergov.org
*Counsel for Defendant City and County of Denver*

Andrew D. Ringel
Kendra K. Smith
Hall & Evans, LLC
1001 17th Street, Suite 300
Denver, Colorado 80202
ringela@hallevans.com
smithk@hallevans.com
*Counsel for Defendant Beth McCann*

*s/ Charlotte Bocquin Scull*
Paralegal – Killmer Lane & Newman, LLP