IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03450-RBJ

JESSICA PECK,

      Plaintiff,

v.

MICHELLE BARNES, in her official capacity as Executive Director of the Colorado
Department of Human Services; and
BETH McCANN; in her official capacity as the District Attorney of the Second Judicial
District, State of Colorado,

      Defendants.

---

## MOTION FOR SUMMARY JUDGMENT FROM DEFENDANT BETH MCCANN

---

      Defendant Beth McCann ("District Attorney McCann"), by and through her attorneys, Andrew D. Ringel, Esq. and Kendra K. Smith, Esq. of Hall & Evans, LLC, respectfully submits this Motion for Summary Judgment, as follows:

### <u>INTRODUCTION</u>

      Plaintiff Jessica Peck, Esq., brings this action for declaratory and injunctive relief challenging the facial constitutionality of the Colorado Children's Code Records and Information Act, C.R.S. §§ 19-1-301 *et seq.* ("the Children's Code"). Plaintiff challenges C.R.S. § 19-1-307 ("Section 307"), protecting public disclosure of child abuse and neglect records and reports by imposing petty and misdemeanor penalties for unlawful disclosure, on First Amendment overbreadth and vagueness grounds. District Attorney McCann now

moves for summary judgment on Plaintiff's claims initially on standing grounds because Plaintiff has no injury in fact due to their being no credible threat of prosecution, and additionally on their merits.  Plaintiff's speech does not qualify for First Amendment protection because it does not pertain to a matter of public concern.  Section 307 also passes constitutional muster because it is narrowly tailored to serve a compelling state interest.  Section 307 is part of a federal legislative scheme, the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 5101 *et seq.*, mandating states maintain confidentiality of child abuse records, except as explicitly provided by federal law, to receive federal funds.  Section 307 is narrowly tailored because it imposes no blanket disclosure ban, but only restricts what is necessary to balance the privacy interests of individuals involved in child abuse and neglect reports with the need to protect the public from official misconduct.  The statute leaves a myriad of authorized avenues of reporting official misconduct, none of which Plaintiff utilized.  Moreover, Plaintiff has not and cannot establish Section 307 authorizes discriminatory enforcement, and her hyper-technical reading of the statute is insufficient to create vagueness.

## ARGUMENT[1]

### A.    PLAINTIFF LACKS STANDING.

#### i.    Standing Principles

"Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and

---

[1] All facts relied upon are derived from the Parties' Joint Statement of Stipulated Facts and are cited by paragraph number.  [ECF 60].  District Attorney McCann considers such facts admitted for purposes of summary judgment only.

unchanging part of the case-or-controversy requirement of Article III." ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560 (1992). "Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an '**injury in fact**' -- an invasion of a legally protected interest which is (a) concrete and particularized; and (b) '**actual or imminent, not 'conjectural' or 'hypothetical**.' Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" ***Id***. at 560-561 (emphasis added) (internal citations omitted). Plaintiff bears the burden of establishing these elements with appropriate summary judgment evidence. ***Id***. at 561.

To obtain prospective relief, a plaintiff must show a "credible threat of future prosecution." ***Dias v. City & Cnty. of Denver***, 567 F.3d 1169, 1176 (10th Cir. 2009). "To establish standing to seek prospective relief, a plaintiff must show a continuing injury . . . ." ***Id***. "As the Supreme Court explained, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" ***Id***. at 1176-1177 (quoting ***O'Shea v. Littleton***, 414 U.S. 488, 495-96 (1974)).

"In the context of a facial challenge to the constitutionality of a penal statute, a plaintiff alleges a continuing injury if 'there exists a **credible threat of [future] prosecution thereunder**.'" ***Id***. (quoting ***Ward v. Utah***, 321 F.3d 1263, 1267 (10th Cir.

2003) ("*Ward I*") (emphasis added)).   In the First Amendment context, "the Supreme Court 'has enunciated other concerns that justify a lessening of prudential limitations on standing.'"   *Ward I*, 321 F.3d at 1266 (quoting *Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984)).   Specifically, "'[t]he mere threat of prosecution under the allegedly unlawful statute may have a 'chilling' effect on an individual's protected activity,' and 'the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.'"   *Id.* at 1266-1267 (internal quotations omitted).   "A plaintiff bringing a facial challenge to a statute on First Amendment grounds, however, must nonetheless establish an injury-in-fact sufficient to satisfy Article III's case-or-controversy requirement."   *Id.* at 1267; *Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 884 (11th Cir. 2000).

"In the First Amendment context, two types of injuries may confer Article III standing to seek prospective relief."   *Id.* (internal citations omitted).   "First, a plaintiff generally has standing if he or she alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'"   *Id.* (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))).   Second, "a First Amendment plaintiff who faces a credible threat of future prosecution suffers from an 'ongoing injury resulting from the statute's **chilling effect** on his desire to exercise his First Amendment rights."   *Id.* (emphasis in original).   However, a "**subjective chill**" is not adequate.   *Id.* (emphasis added) (citing *Laird v.*

*Tatum*, 408 U.S. 1, 13-14 (1972)).  "In other words, to satisfy Article III, the plaintiff's expressive activities must be inhibited by 'an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement."  ***Winsness v. Yocom***, 433 F.3d 727, 732 (10th Cir. 2006) (internal quotations omitted).

> ii.    <u>Plaintiff cannot show an injury in fact because the undisputed facts demonstrate no credible threat of prosecution</u>.

Plaintiff seeks to enjoin any enforcement of the criminal provisions of Section 307 and a declaration Section 307's petty offense and misdemeanor provisions are unconstitutional.  [ECF 24, at pp. 10-13].  Plaintiff bears the burden of showing she is subject to credible threat of future prosecution under Section 307 for purposes of meeting the injury in fact element of standing.  ***Dias***, 567 F.3d at 1177; ***Ward I,*** 321 F.3d at 1267.

No objectively justifiable fear of real consequences to Plaintiff in the future comprising a credible threat of prosecution actually exists.  ***Winsness,*** 433 F.3d at 732. Plaintiff's claims are premised on a subjective chill of her desire to exercise her First Amendment rights.  [ECF 55, at ¶¶ 20, 22].  A subjective chill, on its own, however, cannot meet the threshold of a credible threat of prosecution.  ***Ward I***, 321 F.3d at 1266 (citing ***Laird***, 408 U.S. at 13-14).  Thus, the critical inquiry becomes whether Plaintiff's subjective chill is accompanied by any "**<u>continuing, present adverse effects</u>**" to render her fear objectively justifiable.  ***Dias***, 567 F.3d at 1176-1177 (emphasis added); ***O'Shea***, 414 U.S. at 495-96.  Here, Plaintiff suffers no continuing, present adverse effects supporting any objective chill to her First Amendment rights.

First, the basis of Plaintiff's subjective chill stems solely from past conduct resulting in a single, *past adverse effect*.  The conduct at issue concerns Plaintiff's January 2019 statements to *Westword* expressing her view Denver brought a dependency and neglect case against her client, the mother of a three-year-old girl, based on her client's support for her ex-husband, who was awaiting trial on murder charges.  Plaintiff named the family members to the newspaper.[2]  [ECF 60, ¶¶ 33-34; ECF 24-2].  The alleged adverse effect concerns a January 18, 2019, Order by the Magistrate Judge in the dependency and neglect case, notifying "all parties that any identifying information pertaining to this dependency and neglect proceeding shall be kept confidential in accordance with [Section 307]."  [ECF 60, ¶ 35].  Plaintiff admits the Magistrate Judge took no further action against her for violating Section 307.  [ECF 60, ¶ 36].  Plaintiff asserts no other adverse effects.  This single, past adverse effect does not support any objective chill of Plaintiff's rights.  *O'Shea,* 411 U.S. at 495-96; *Dias*, 567 F.3d at 1176-77.

Second, no continuing, present adverse effects exist to make Plaintiff's fears objectively justifiable.  No facts show the District Attorney or any other law enforcement official will enforce Section 307 against Plaintiff.  Plaintiff admits she has never been prosecuted or threatened with prosecution.  [ECF 60, ¶ ¶ 44].  She has not been contacted by District Attorney McCann or anyone from the DA's office.  [ECF 60, ¶ 42].  The Denver Police Department ("DPD") has not contacted her either.  [ECF 60, ¶ 46].  Indeed, no law

---

[2] In her First Amended Complaint [ECF 24] and Declaration [ECF 55], Plaintiff references other statements to the press (reflected in [ECF 24-1]).  However, Plaintiff provides no facts supporting standing premised on these statements.  Plaintiff offers no admissible evidence she suffered any adverse effects from these statements, much less present adverse effects supporting any objective chill.

enforcement agency has ever contacted Plaintiff regarding Section 307.  [ECF 60, ¶ 49].

Plaintiff is aware of no action taken by the Department to seek enforcement of Section

307, either against Plaintiff or any other person.  [ECF 60, ¶ 50].  Plaintiff knows of no

DPD investigation of her.  [ECF 60, ¶ 47].  Moreover, the District Attorney has received

no law enforcement or judicial referral for investigation or prosecution of Plaintiff.  [ECF

60, ¶¶ 40-41].  Simply, there are no facts showing any continuing, present adverse effect

giving rise to a credible threat of prosecution against Plaintiff.  *Compare* ***Faustin v. City***

***& County of Denver***, 268 F.3d 942, 948 (10th Cir. 2001) ("***Faustin I***"); ***PETA v.***

***Rasmussen***, 298 F.3d 1198, 1203 (10th Cir. 2002).

Third, even if we cannot be absolutely certain Plaintiff will never face a risk of

prosecution for a future violation of Section 307,[3] lack of certainty does not create a

credible threat of prosecution.  ***Winsness,*** 433 F.3d at 733.  The Tenth Circuit in

***Winsness*** foreclosed this argument, explaining:

> Mr. Larsen alleges that he suffers a concrete injury because he is "fearful"
> that if he violates the statute again he will be prosecuted, and that this has
> a chilling effect on his freedom of expression.  But this is insufficient to
> support standing unless there is a "credible threat of prosecution or other
> consequences following from the statute's enforcement." ***D.L.S. v. Utah***,
> 374 F.3d 971, 975 (10th Cir. 2004) (citing ***Ward I***, 321 F.3d at 1267).
>
> . . . Mr. Larsen argues, in effect, that the possibility that he could be arrested
> or prosecuted for flag abuse has not been reduced to zero . . .

---

[3] It is unclear whether Plaintiff's anticipated future conduct even violates Section
307.  Plaintiff suggests that, were she to make future statements, she would do so "without
identifying any child, family member, or other non-official involved." [ECF 24, ¶ 45].  And
that does not appear to contravene the confidentiality provisions of Section 307.  *See*
C.R.S. § 19-1-307(1)(a)-(c) and § 19-1-307(4).  The District Attorney and Denver have no
policies or positions suggesting such conduct violates Section 307.  [ECF 60, ¶¶ 43 and
45].  These facts stand only to bolster the proposition that there is no credible threat of
prosecution to Plaintiff.

> In part, the answer to these arguments is that the relief Mr. Larsen seeks would not eliminate these risks.  Prosecutors in other parts of the state would not be bound by injunctive relief against these defendants, and Mr. Larsen has not sought injunctive relief requiring that police officers be instructed not to enforce the statute.  **More fundamentally, however, it is not necessary for defendants in such cases to refute and eliminate all possible risk that the statute might be enforced.  It is the plaintiff's burden to demonstrate an "actual or imminent, not conjectural or hypothetical" threat that the statute will be enforced against him, such that he suffers a constitutionally cognizable injury from the ensuing chilling effect on his conduct**.  *Lujan*, 504 U.S. at 560.

*Id*. at 732-733.

Fourth, a credible threat of prosecution is not created by the lack of a disavowal of future prosecution.  *Winsness* clarified "'[t]here is no federal right to obtain advisory opinions from local prosecutors.'"  *Id*. at 733 (quoting *Lawson v. Hill*, 368 F.3d 955, 959 (7th Cir. 2004)).  Even where prosecutorial disavowals exist, the determinative inquiry remains whether the plaintiff suffered an injury in fact, one that is actual or imminent, not conjectural or hypothetical, and prosecutorial disavowals may simply confirm that the plaintiff suffered no such injury in fact.  *Id*. at 733; *Lujan*, 504 U.S. at 560-61.  Here, Plaintiff has no reasonable concern of prosecution.  [ECF 60, at ¶¶ 40-42].

iii.   Plaintiff's overbreadth challenge does not exempt her need to establish injury in fact.

Plaintiff challenges Section 307 on overbreadth grounds.  [ECF 24, ¶¶ 41-45].  Plaintiff alleges "Section 307 is overbroad and violates the rights of Ms. Peck and other speakers who would disclose official misconduct as reflected in child abuse reports and records, even when they do so only as reasonably necessary to expose official

incompetence or wrongdoing, or without identifying any child, family member, or other non-official involved."  [ECF 24, ¶ 45].

Courts recognize an overbreadth doctrine in the context of First Amendment challenges.  ***Members of City Council v. Taxpayers for Vincent***, 466 U.S. 789, 796-801 (1984).  "[T]o prevail on an overbreadth challenge, a plaintiff must establish <u>**substantial**</u> overbreadth."  ***Faustin v. City & County of Denver***, 423 F.3d 1192, 1199 (10th Cir. 2005) ("***Faustin II***") (emphasis in original) (citing ***Broadrick v. Okla.***, 413 U.S. 601, 615 (1973)).  Substantial overbreadth means "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court."  ***Taxpayers for Vincent***, 466 U.S. at 801 (internal citations omitted).  "In addition to being substantial, the overbreadth must also be real."  ***Faustin II***, 423 F.3d at 1199 (citing ***Broadrick***, 413 U.S. at 615); ***West***, 206 F.3d at 1367 (requiring plaintiff to establish a "realistic" chilling effect).

Yet, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  ***Taxpayers for Vincent***, 466 U.S. at 800.  Further, an overbreadth challenge does not exempt a plaintiff from showing an injury in fact.  ***Id***. at 802.  As ***Winsness*** explained:

> Finally, Mr. Larsen appears to argue that we should dispense with the requirement that he suffer an injury-in-fact because he is bringing a facial challenge on First Amendment grounds under the "overbreadth" doctrine. This is a misunderstanding.   Overbreadth is an exception to the *prudential* standing doctrine requiring plaintiffs to show that their own First Amendment rights (as opposed to the rights of third parties) have been violated, but it does not exempt plaintiffs - even plaintiffs bringing facial challenges on overbreadth grounds - from the bedrock Article III standing requirements of injury-in-fact, causation, and redressability.  A plaintiff who

> himself is not injured cannot sue to enjoin enforcement of a statute on the
> ground that it violates someone else's rights.

***Winsness,*** 433 F.3d at 734 (emphasis in original and internal citations omitted).  More precisely, to establish standing on an overbreadth facial challenge, a plaintiff must demonstrate how the statute inhibits the speech of third parties, distinct from any inhibition to Plaintiff's speech.  ***Faustin I*** analyzes this point:

> Faustin argues her challenge of the statute is a facial challenge under the overbreadth doctrine.   Facial challenges to statutes are sometimes permissible, especially where speech protected by the First Amendment is at stake.  To prevail on a facial attack, the plaintiff must demonstrate that the challenged law either could never be applied in a valid manner or, 'even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it may inhibit the constitutionally protected speech of third parties.'   'There must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.'
>
> **<u>Faustin offers no explanation of how the statute inhibits the speech of third parties.  Rather, she argues that the statute unconstitutionally inhibits her own speech and that if she were prosecuted under it, the statute would be unconstitutionally applied to her</u>**.  **<u>The overbreadth doctrine does not apply where there is no significant difference between the claim that the ordinance is invalid because of overbreadth and the claim that it is unconstitutional when applied to the plaintiff's own activities</u>**.  The overbreadth doctrine is inapplicable to Faustin's claim and does not provide standing for her to challenge the constitutionality of [the statute at issue].

***Faustin I***, 268 F.3d at 948-949 (emphasis added).  Here, as in ***Faustin I***, Plaintiff fails to show how Section 307 inhibits others' speech.  Plaintiff only attempts to show Section 307 subjectively chills her own speech,[ECF 24, ¶¶ 41-45], but no evidence even suggests it also inhibits third parties' rights.  This is insufficient for an overbreadth claim.

***Taxpayers for Vincent***, 466 U.S. at 800.

**B.   PLAINTIFF'S FACIAL CONSTITUTIONAL CHALLENGES OF SECTION 307 UNDER OVERBREADTH AND VAGUENESS FAIL.**

   i.   Principles of Facial Constitutional Challenges

"Facial challenges are strong medicine."  *Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005) ("*Ward II*").  "A facial challenge to a [law] is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [law] would be valid."  *West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1367 (10th Cir. 2000) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  "Because facial challenges push the judiciary towards the edge of its traditional purview and expertise, courts must be vigilant in applying a most exacting analysis to such claims."  *Id*. at 1247.

   ii.   Plaintiff's claim for First Amendment overbreadth fails.

      a.   *Standard for Overbreadth*

"An overbreadth challenge is a facial challenge."  *Ward II*, 398 F.3d at 1246. Overbreadth "has been employed by the Court sparingly and only as a last resort."  *Id*.; *Faustin II*, 423 F.3d at 1199; *West*, 206 F.3d at 1367.  "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute."  *Ward II*, 398 F.3d at 1246; *Osborne v. Ohio*, 495 U.S. 103, 120 & n.14 (1990).

      b.   *Plaintiff's speech does not qualify for First Amendment protection because it does not pertain to a matter of public concern.*

Plaintiff alleges her speech pertains to information of a "public concern," constituting specifically "political speech," and warranting First Amendment protection. [ECF 24, ¶¶ 42-43].  However, Plaintiff's assertions fail.

District Attorney McCann agrees that the public-concern test remains the most helpful guide in assessing whether Plaintiff's speech is protected under the First Amendment.   Courts typically apply the public-concern test as one of five elements determining whether a public employee speaking in the course and scope of her employment is entitled to First Amendment protection.   *See **Pickering v. Bd. of Educ.**,* 391 U.S. 563 (1968); ***Garcetti v. Ceballos***, 547 U.S. 410 (2006) (describing development of public-employee free-speech jurisprudence); *see also e.g.,* ***Butler v. Bd. of Cty. Comm'rs for San Miguel Cty.***, 920 F.3d 651, 655 (10th Cir. 2019) (The five-part ***Garcetti/Pickering*** analysis evaluates: " .  .  .  (2) whether the speech was on a matter of public concern;  .  .  ."").   The speech here concerns information obtained by Plaintiff from her role as an attorney representing her client and therefore is work-related.   [ECF 60, ¶¶ 33-34; ECF 24-2].   Consequently, even though this case does not involve the regulation of speech by the government against its employee, the public-concern test is instructive.

Whether Plaintiff's speech is a matter of public concern is a question of law. ***Leverington v. City of Colorado Springs***, 643 F.3d 719, 726-27 (10th Cir. 2011). "'Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'"   ***Butler***, 920 F.3d at, 655-56  (quoting ***Lane v. Franks***, 573 U.S. 228, 241 (2014)).   "Courts construe 'public concern' very narrowly."   ***Butler***, 920 F.3d at 656; ***Leverington***, 643 F.3d at 727.  For example, "[s]tatements revealing official impropriety

usually involve matters of public concern." *Id.* at 656 (internal quotations omitted). However, "'it is not always enough that the subject matter of a communication be one in which there **might** be general interest'; rather, 'what is **actually said** on the topic is the crux of the public concern content inquiry.'" *Leverington*, 643 F.3d at 727 (emphasis in original) (internal quotations omitted); *see also*, **Lee v. Nicholl**, 197 F.3d 1291, 1295 (10th Cir. 1999) ("[I]t is insufficient that the speech relates generally to a subject matter of public importance"). Further, "'[i]n analyzing whether speech constitutes a matter of public concern, we may focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with **personal disputes and grievances unrelated to the public's interest**.'" *Leverington*, 643 F.3d at 727 (emphasis in original) (internal quotations omitted).

Here, Plaintiff's speech fails the public concern test. First, the form and context of Plaintiff's speech weighs neither in favor nor against treating the speech as a matter of public concern. Instead, these factors are non-determinative. Plaintiff provided opinion statements to a newspaper. [ECF 60, ¶ 34; ECF 24-2]. While a newspaper is plainly a public medium, Plaintiff did not provide sworn testimony in a court, administrative, or governmental proceeding. *Cf.* **Butler**, 920 F.3d at 663 ("the form and context of Butler's speech—sworn testimony in a court proceeding—weigh in favor of treating it as a matter of public concern") and *cf.* **Lane**, 573 U.S. at 238 ("the form and context of the speech—sworn testimony in a judicial proceeding—fortify" the conclusion that Lane's testimony about "corruption in a public program and misuse of state funds" was a matter of public concern).

Instead, the decisive factor for the public concern inquiry is the content of Plaintiff's speech.   In *Butler*, the court emphasized the plaintiff's speech—character witness testimony, in a child custody proceeding, for his sister-in-law—was purely personal.   The court noted that, although such testimony has great significance to the parties involved, it is "ordinarily not of general interest to the community as a whole."   *Id.* 920 F.3d at 663. The court rejected the notion that any testimony at a child custody proceeding was a "matter of public concern in light of the State of Colorado's concern for the welfare of children and the fair resolution of child custody matters."   *Id.* at 664.   In so doing, the court emphasized: "We accept that Colorado has a general interest in these matters.   But '[i]t is not sufficient that the topic of the speech be of general interest to the public; in addition, what is **actually said** must meet the public concern threshold.'"   *Id.* (emphasis in original) (internal quotations omitted).    To clarify,  *Butler*  contrasted  the  character-witness testimony, motivated by personal support for plaintiff's sister-in-law, with the testimony at issue in *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1505-06 (7th Cir. 1994), noting:

> *Wright* did not hold, as Butler appears to assert, that any testimony given in  any  child  custody  hearing  is  a  matter  of  public concern.  Instead, *Wright* held that a social worker's report and testimony regarding 'her version of the procedural and substantive shortcomings of the Department's official investigation of the case' was a matter of public concern as it pertained to 'the State's methods of investigating an allegation of child abuse,' as it addresses serious systemic deficiencies in the operation of a public department.  That testimony is much different than Butler's testimony here, speaking to the character of his sister-in-law and stating the hours of operation of the County's Road and Bridge Department.

*Id.* (internal citations omitted).

Plaintiff characterizes her speech as exposing official misconduct. [ECF 24, ¶¶ 42-45]. But the content of Plaintiff's speech does not support her characterization. Plaintiff made the following statements: "She expressed her view that Denver Human Services brought a dependency and neglect case against the mother based on the mother's support for her ex-husband and the girl's father." [ECF 60, ¶ 34]. She provided "a portion of an e-mail communication from a caseworker supervisor detailing some of Denver Human Services' concerns." [*Id*.; ECF 24-2]. She also provided the newspaper "with the date, time, and courthouse location of an upcoming hearing in the case." [ECF 60, ¶ 34]. Such general statements—opining about why a dependency and neglect proceeding was pursued, without identifying any procedural or substantive shortcoming—do not meet the criteria of exposing official misconduct. *Cf.* **Wright**, *supra* (social worker report and testimony regarding "her version of the procedural and substantive shortcomings of the Department's official investigation of the case" was a matter of public concern as it pertained to "the State's methods of investigating an allegation of child abuse," as it addresses serious systemic deficiencies in the operation of a public department). Additionally, Plaintiff's sharing the date, time, and location of the hearing does not constitute speech of a public concern. **Butler**, 920 F.3d at 663-664 (speech involving non-controversial topics or information otherwise available to the public does not bring speech into the realm of public concern).

As in **Butler**, Plaintiff had a personal motivation in making these statements to the newspaper. Plaintiff volunteered information to the press to support and advocate for her client. [ECF 60, ¶¶ 33-34; ECF 24-2]. Had Plaintiff's motivation been to expose public

wrongdoing, she would have availed herself of the myriad statutorily-authorized avenues for reporting official misconduct.  But Plaintiff never even attempted any such report.  [ECF 60, ¶¶ 20-26; 37].  Consequently, Plaintiff's speech does not meet the public concern test.

        c.    *Plaintiff's overbreadth challenge fails because Section 307 is narrowly tailored to serve a compelling state interest.*

Plaintiff's overbreadth challenge also fails because Section 307 passes constitutional muster.  If a statute restricts or burdens the exercise of First Amendment rights, it will nevertheless survive an overbreadth challenge if it is **narrowly tailored to serve a compelling state interest**.  *See Broadrick*, 413 U.S. at 611-612.  And that is the case here.  Section 307 is narrowly tailored to serve a compelling state interest.

(1)    <u>Compelling State Interest</u>

Section 307 relates to federal legislation known as CAPTA.  [ECF 60, ¶¶ 27-30].  CAPTA requires that states maintain the confidentiality of child abuse and neglect records, except as explicitly provided by federal law, for purposes of receiving federal grants.  42 U.S.C. § 5106a(b)(2)(B)(viii).  In compliance with CAPTA, all 50 states have statutes protecting against public disclosure of records and reports concerning child abuse or neglect.[4]

Multiple reasons support the confidentiality of child abuse and neglect records. Disclosure of information identifying an abused or neglected child and the circumstances of the child's abuse or neglect may be detrimental.  [ECF 60, ¶ 51].  Child abuse is one

---

[4] *See Child Welfare Information Gateway*: "Disclosure of confidential child abuse and neglect records." Washington, DC: U.S. Department of Health and Human Services, Children's Bureau (2017), Exh. A-1.

of the most difficult crimes to protect against.  [*Id.*, ¶ 52].  Often, there are no witnesses except the victim.  [*Id.*].  Children often feel guilt and vulnerability associated with their abuse.  [*Id.*].  These negative feelings amplify when the abuser is a parent or loved one.  [*Id.*].  Children are more likely to report abuse when assured their identifying information will remain confidential and protected from public disclosure.  [*Id.*].  Both children and their families may suffer if their confidential information is disclosed.  [*Id.*, ¶ 53].  CAPTA and the resulting state confidentiality statutes, including Section 307, are designed to protect children and families from such harms.  [*Id.*, ¶ 54].

Indeed, the Supreme Court recognizes state statutes safeguarding the confidentiality of child abuse and neglect records serve a compelling interest.  In ***Pa. v. Ritchie***, 480 U.S. 39 (1987), the Supreme Court examined Pennsylvania's statute protecting the confidentiality of child abuse and neglect records.  In ***Ritchie***, the defendant was convicted of rape, involuntary deviate sexual intercourse, incest, and corruption of a minor, as a result of assaults on his minor daughter.  *Id*. at 43.  During pretrial proceedings, the defendant attempted to obtain the contents of a file that Pennsylvania's Children and Youth Services ("CYS") made in its investigation of the victim's complaint.  The defendant sought the file to find names of witnesses, a medical report, and other potentially exculpatory evidence.  *Id*. at 43-44.  Defendant was denied access because the files were confidential and protected, subject to specific statutory exceptions.  *Id*.  The Supreme Court held the defendant had no right to examine the child abuse and neglect records, unless the trial court first determined, through an *in camera* review, that the

records contained material exculpatory evidence.  In so doing, the court noted

Pennsylvania had a compelling interest in protecting its child abuse information:

> We find that Ritchie's interest (as well as that of the Commonwealth) in  ensuring a fair trial can be protected fully by requiring that the CYS files be submitted only to the trial court for *in camera* review . . .
>
> **To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information**. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse. Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim.  A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent.  It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality.  Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected.  **Recognizing this, the Commonwealth -- like all other States -- has made a commendable effort to assure victims and witnesses that they may speak to the CYS counselors without fear of general disclosure**. The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result.

*Id*. at 60-61 (emphases added).  Other courts have similarly concluded that child-record

confidentiality statutes serve a compelling state interest.  For example, the Supreme

Court of Hawaii has followed ***Ritchie***.  *See, e.g., **State v. Peseti***, 65 P.3d 119, 132-133

(Haw. 2003) (family court sealing complainant's Child Protective Services file did not

violate the defendant's due process rights, recognizing the compelling state interest in the

confidentiality of child abuse and neglect records); ***In re FG***, 421 P.3d 1267 (Haw. 2003)

(the confidentiality of child abuse and neglect records serves a compelling state interest).

Although factually and legally distinguishable as it concerned a prior restraint on speech

prohibiting parents from publicly disclosing their children's names, *In re FG* is informative

based on its articulation of the compelling interest in confidentiality of these records:

> In, ***Ritchie*** the Court also noted that '[t]he importance of the public interest
> at issue in this case is evidenced by the fact that all 50 States and the
> District of Columbia have statutes that protect the confidentiality of their
> official records concerning child abuse.'  Indeed, the states' maintenance of
> the confidentiality of child abuse records is required as part of their
> compliance with the federal Child Abuse Prevention and Treatment Act
> (CAPTA).  CAPTA provides federal grants to states for the purpose of
> assisting them in improving the child protective services of the state.  In
> order to receive funding, states must submit plans which include how the
> state will 'preserve the confidentiality of all records in order to protect the
> rights of the child[.]'
>
> This compelling state interest in protecting the confidentiality of child abuse
> information is reflected in numerous Hawai'i statutes and regulations . . .
> Hawai'i also provides for the confidentiality of DHS records regarding
> reports and investigations of child abuse or neglect, and the intentional
> unauthorized disclosure of a report or record of a report to DHS constitutes
> a misdemeanor.  HRS § 350-1.4 (Supp. 2016).
>
> Thus, as recognized by the United States Supreme Court, and as reflected
> in the extensive state and national statutory protection of the confidentiality
> of child abuse records, there is a constitutionally recognized compelling
> state interest in keeping child abuse records confidential.

421 P.3d at 1275 (internal citations omitted).

Moreover, this Court has found the confidentiality of child abuse and neglect

information outweighs First Amendment speech in the context of a public employee

making a report of suspected child abuse to the police.  *See **Gelfand v. Cherry Creek***

***Sch. Dist.***, Civil Action No. 07-cv-01923-CMA-CBS, 2009 U.S. Dist. LEXIS 48931 at *29-

*31 (D. Colo. June 10, 2009) ("the question becomes whether Plaintiff's interest in

reporting the Student Incident outweighs Defendants' interest in protecting the Student's

confidentiality?  This is a question of law for the Court, and the facts of this case compel

an answer which comes easily: No. . . Defendants' interest in protecting the confidentiality of Student outweighs Plaintiff's interest in reporting the Student Incident to the police, particularly because Defendants had appropriately reported the Student Incident in accordance with the Child Protection Policy").

(2)   <u>Narrowly Tailored</u>

Section 307 is narrowly tailored to serve its compelling state interest.  To survive an overbreadth challenge, a statute must be narrowly tailored, not "perfectly tailored." **Williams-Yulee v. Fla. Ba**r, 575 U.S. 433, 454 (2015) (internal citations omitted). "The First Amendment does not confine a State to addressing evils in their most acute form." **Id**.  To be narrowly tailored, the statute must not burden substantially more speech than necessary.  **Evans v. Sandy City**, 928 F.3d 1171, 1179 (10th Cir. 2019); **Ward v. Rock Against Racism**, 491 U.S. 781, 799 (1989).  "In other words, the government 'may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'"  **Evans**, 928 F.3d at 1179-1180 (quoting **Rock Against Racism**, 491 U.S. at 799).  "This requirement demands a 'close fit between ends and means' to ensure speech is not sacrificed for efficiency."  **Id**. at 1180.  "At the same time, such regulation 'need not be the least restrictive or least intrusive means of doing so.  Rather, the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'"  **Id**. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the

regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id*.

Section 307 restricts only what is necessary to balance the privacy interests of the children, their families, and informants with the need to protect the public from official misconduct of those overseeing the child protection proceedings. [*See* ECF 60, ¶¶ 13-19]. Plaintiff alleges Section 307 fails because it does not allow the exposure of official misconduct. [ECF 24, ¶ 45]. But that assertion is meritless.

First, Section 307 allows the disclosure of the records to statutorily authorized people, including for purposes of investigating and remedying official misconduct. [ECF 60, ¶ 14, 19, 22-24]. Plaintiff acknowledges these numerous avenues for reporting official misconduct, and concedes she availed herself of none of them. [ECF 60, ¶ 37].

Section 307 places restriction on only under what circumstances ***public*** disclosure of records occurs **without a court order**, [*see* ECF 60, ¶¶ 14, 16] versus under what circumstances ***public*** disclosure of records occurs **after first obtaining a court order** [see ECF 60, ¶ 16]. Specifically, disclosure of identifying information in child abuse and neglect reports "shall not be prohibited when there is a death of a suspected victim of child abuse or neglect and the death becomes a matter of public record or the alleged juvenile offender is or was a victim of abuse or neglect or the suspected or alleged perpetrator becomes the subject of an arrest by a law enforcement agency or the subject of the filing of a formal charge by a law enforcement agency." [ECF 60, ¶ 16; C.R.S. 19-1-307(b)]. In those circumstances, Section 307 clarifies public disclosure may occur without a court order. However, where those circumstances are absent, "[d]isclosure of

the name and address of the child and family and other identifying information involved in such reports shall be permitted only when authorized by a court for good cause."  [*Id.*]. Hence, the statute does not completely ban public disclosure as Plaintiff suggests – rather, it regulates the means by which any public disclosure must occur, based on the egregiousness of the factual circumstances involved in the child protection proceedings. And, the means chosen, through a court order for good cause shown in less-egregious circumstances, where the public's interest in transparency is less strong, is not substantially broader than necessary to balance the compelling privacy interests at stake. *Evans*, 928 F.3d at 1180; *Rock Against Racism,* 491 U.S. at 800.

> iii.   Plaintiff's claim for vagueness fails.

> > a.  *Standard for Vagueness*

"'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.'"  *Faustin II*, 423 F.3d at 1201 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).  "There are two possible, and independent, reasons a statute may be impermissibly vague: 'First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.'"  *Id*. a 1201-1202 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2002).  "A plaintiff may challenge a statute as overly vague where the statute's deterrent effect on legitimate expression is 'both real and substantial' and the statute is not 'readily subject to a narrowing construction by the state courts . . . ."  *Id*. at 1202 (quoting *Young v. Am. Mini Theatres, Inc.,* 427 U.S. 50, 60-61 (1976)).  "Speculation and 'hypertechnical

theories as to what the statute covers' cannot create vagueness, especially when the statute is 'surely valid in the vast majority of its intended applications.'" *Id*. (quoting *Hill*, 530 U.S. at 733). "Finally, where a plaintiff knows the action in question violated the restriction, we have said that this 'state of mind is inconsistent with any claim that the policy did not give . . . fair warning . . . .'" *Faustin II*, 423 F.3d at 1202 (quoting *West*, 206 F.3d at 1368). "In such a case, we will not conclude that the policy is unconstitutionally vague." *Id*.

b. *Section 307 is not vague.*

First, Plaintiff contends "Sections 307(1) and 307(4) are vague and not clearly defined." [ECF 24, ¶ 47]. More specifically, Plaintiff contends she and other speakers are uncertain as to when an improper disclosure would constitute a petty-offense violation of Section 307(1)(c), as opposed to a misdemeanor offense under Section 307(4). [ECF 24, ¶ 47]. This argument is properly understood as a challenge to Section 307 on the ground that it authorizes or encourages discriminatory enforcement. *Faustin II*, 423 F.3d at 1201-1202. But that attack fails.

Section 307(1)(c) states:

> Any person who violates any provision of this subsection (1) is guilty of a class 2 petty offense and, upon conviction thereof, shall be punished by a fine of not more than three hundred dollars.

[ECF 60, ¶ 17].

Section 19-1-307(4) provides:

> Any person who **improperly releases** or who **willfully permits or encourages** the release of data or information contained in the records and reports of child abuse or neglect to persons not permitted access to such information by this section or by section 19-

23

> 1-303 commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S.

[ECF 60, ¶ 18 (emphasis added)]. The plain language of these two provisions demonstrates that the more severe misdemeanor penalty applies when a greater degree of culpability underlies the unauthorized disclosure (when improperly or willfully). The statute is not vague by authorizing discriminatory enforcement.

Second, Plaintiff contends Section 307(1) does not explain exemptions when multiple children are referenced (such as when other children related to the child at issue are included in the report). [ECF 24, ¶ 49]. This contention also fails. Section 307(1) has three subsections. Section 307(1)(a) provides:

> Except as otherwise provided in this section and section 19-1-303, reports of child abuse or neglect and the name and address of **any child**, **family**, or informant **or any other identifying information** contained in such reports shall be confidential and shall not be public information.

[ECF 60, ¶ 15 (emphasis added)]. Section 19-1-307(1)(b) provides:

> Disclosure of the name and address of **the child and family** and **other identifying information** involved in such reports shall be permitted only when authorized by a court for good cause. Such disclosure shall not be prohibited when there is a death of a suspected victim of child abuse or neglect and the death becomes a matter of public record or the alleged juvenile offender is or was a victim of abuse or neglect or the suspected or alleged perpetrator becomes the subject of an arrest by a law enforcement agency or the subject of the filing of a formal charge by a law enforcement agency.

[ECF 60, ¶ 16 (emphasis added)]. Section 19-1-307(1)(c) states:

> Any person who violates any provision of this subsection (1) is guilty of a class 2 petty offense and, upon conviction thereof, shall be punished by a fine of not more than three hundred dollars.

[ECF 60, ¶ 17].  Read together, this statutory language makes clear other children referenced in a child abuse or neglect report qualify as "family" when those children are related to the child at issue.  Conversely, the identities of those other children would be considered "other identifying information" when those children are not related to the child at issue.  The statutory exemption for public disclosure without first obtaining a court order contained in Section 307(1)(b) contemplates disclosure of this information without running afoul of the statute.  Plaintiff's speculative, hyper-technical theory does not create vagueness.  ***Faustin II***, 423 F.3d at 1202.[5]

WHEREFORE, for all the foregoing reasons, Defendant Beth McCann respectfully requests this Court grant her summary judgment on all of Plaintiff's claims, dismiss Plaintiff's claims in their entirety with prejudice, and for all other and further relief as this Court deems just and appropriate.

Dated this 19th day of August, 2020.

Respectfully submitted,

*s/ Andrew D. Ringel*
Andrew D. Ringel, Esq.
Kendra K. Smith, Esq.
HALL & EVANS, LLC
1001 Seventeenth Street, Suite 300
Denver, CO 80202
Phone: (303) 628-3300
Fax:  (303) 628-3368
ringela@hallevans.com
smithk@hallevans.com

**ATTORNEYS FOR DEFENDANT BETH MCCANN**

---

[5]  Finally, District Attorney McCann also incorporates by reference all applicable arguments and authorities raised by Defendant Barnes.

## **CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on the 19th day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Thomas B. Kelley, Esq.
tkelley@kln-law.com

David A. Lane, Esq.
dlane@kln-law.com

Bianca E. Miyata, Esq.
bianca.miyata@coag.gov

Aaron J. Pratt, Esq.
aaron.pratt@coag.gov

Anita Schutte, Esq.
anita.schutte@coag.gov

s/  Nicole Marion, Legal Assistant to
Hall & Evans, LLC