IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03450-STV

JESSICA PECK,

      Plaintiff,

v.

MICHELLE BARNES, in her official capacity as Executive Director of the Colorado
Department of Human Services;
BETH McCANN, in her official capacity as the District Attorney of the Second
Judicial District, State of Colorado, and;
CITY AND COUNTY OF DENVER, A Colorado Home Rule City and County,

      Defendants.
_____

DEFENDANT MICHELLE BARNES' MOTION FOR SUMMARY JUDGMENT
_____

      Abused and neglected children are uniquely vulnerable in our society.

Often abused by people in a position of trust behind closed doors, these children

may be unable to seek help and may fear that crying out will subject them to more

abuse, embarrassment, and retribution.  Similarly, even protective adults in these

children's lives may fear repercussions of reporting child abuse and hesitate to seek

help for a vulnerable child.  The State of Colorado's child welfare system

investigates reports of abuse and neglect to protect these children.  This system's

effectiveness depends on abused children and people who become aware of such

abuse coming forward to tell their stories.  Abused children and adults who care

about them are less likely to report abuse without assurance that their sensitive

information is protected from broad disclosure. Colorado law, through § 19-1-307, C.R.S. (2019), provides such protection.

The Colorado Department of Human Services and defendant, Michelle Barnes, in her official capacity as Executive Director (collectively, the Department), supervise and provide policy direction for Colorado's child welfare system. § 26-1-201(1)(f), C.R.S. (2019). Administered by Colorado's 64 counties, the child welfare system provides services for children and families including child protection, risk assessment, and case management. Section 19-1-307 is critical to the work of the Department and the counties. The statute protects the confidentiality of child abuse and neglect reports and records, and the identifying information of children, families, and reporting parties contained therein. To ensure the protection of confidential child abuse and neglect information, §§ 19-1-307(1)(c) and (4) impose criminal penalties for disclosure not explicitly permitted by law.

Plaintiff, Jessica Peck, challenges the constitutionality of § 19-1-307. ECF 24, ¶¶ 41-49. Ms. Peck, an attorney, argues that § 19-1-307 unconstitutionally prohibited her from publicly disclosing information she obtained in the course of her work from child abuse and neglect reports to the public, including the media. Because Ms. Peck has not established a credible threat of prosecution or a current desire to engage in this speech, she lacks standing to bring this claim.

Even if she had standing, Ms. Peck's substantive arguments disregard the fact that § 19-1-307 is part of a robust system of federal and state privacy laws that

protect individuals' information, balancing the privacy rights of individuals and the government's need to collect personal information to serve the public.  Section 19-1-307 was created in response to the federal Child Abuse Prevention and Treatment and Adoption Reform Act (CAPTA), which was enacted for the protection of children and families.  42 U.S.C. §§ 5101-5116i (2019).  To receive federal funding under CAPTA, all 50 states have adopted similar laws that protect the confidentiality of child abuse and neglect reports and information.[1]  All but five states impose

---

[1] All cited statutes refer to the version currently in effect. *See* Ala. Code § 26-14-8(c), (h); Alaska Stat. §§ 47.10.093(a), (n), 47.17.040(b); Ariz. Rev. Stat. § 8-807(A), (K), (L), (P), (W); Ark. Code § 12-18-909(a), 12-18-205; Cal. Penal Code § 11167.5; Conn. Gen. Stat. §§ 17a-28; 17a-101k(a); Del. Code tit. 16, §§ 906(c)(2), 914; Fla. Stat. §§ 39.202(1), (8), 39.205(6); Ga. Code Ann. §§ 49-5-40(b)(c), 49-5-41, 49-5-44(a)-(b); Haw. Rev. Stat. § 350-1.4(a); Idaho Code Ann. §§ 74-105(7); 16-1629(6); 325 Ill. Comp. Stat. § 5/11; Ind. Code §§ 31-33-18-1; 31-33-26-7; Iowa Code §§ 235A.15.1, 235A.20, 235A.21.1; Kan. Stat. Ann. § 38-2209(a)-(b); Ky. Rev. Stat. Ann. §§ 620.050(5), 620.990; La. Children's Code Art. 616.C; La. Stat. Ann. § 46:56.I; Me. Stat tit. 22, § 4008.1, 4; Md. Fam. Law §§ 5-707, 5-714; Md. Hum. Servs. Code § 1-202(a), (e); Mass. Gen. Laws ch. 119, §§ 51E, 51F; Mich. Comp. Laws § 722.633(3); Miss. Code Ann. §§ 43-21-257(1), 43-21-261(1), 43-21-267; Minn. Stat. § 260E.35; Mo. Rev. Stat. § 210.150.1, .4; Mont. Code Ann. § 41-3-205(1); Neb. Rev. Stat. § 28-725; Nev. Rev. Stat. § 432B.280; N.H. Rev. Stat. Ann. § 169-C:35, -C39, 170-G:8-a.II; N.J. Stat. Ann. § 9:6-8.10a, 10b; N.M. Stat. § 32A-4-33.A, D; N.Y. Soc. Serv. Law §§ 422(4), (12); N.C. Gen. Stat. § 7B-311(a), (c); N.D. Cent. Code §§ 50-25.1-11, 50-25.1-14; Ohio Rev. Code §§ 2151.421(I), 2151.99; Okla. Stat. tit. 10A, §§ 1-2-108(D), 1-6-107(A), (D); Or. Rev. Stat. § 419B.035(1), (9); 23 Pa. Cons. Stat. tit 23, §§ 6339; 6349(b); R.I. Gen. Laws §§ 40-11-13 (imposing criminal sanctions for impermissible disclosures by Department employees), 47-72-8(f) (imposing civil sanctions); S.C. Code Ann. § 63-7-1990(A); S.D. Codified Laws  § 26-8A-13; Tenn. Code Ann. § 37-1-409(a)(1), (g); Tex. Fam. Code Ann. §§ 261.201, 552.101, 552.352; Utah Code Ann. § 62A-4a-412(1), (4); Va. Code Ann. § 63.2-104(A); Vt. Stat. Ann. Tit. 33, § 4921(a), (g) (intentional violation of confidentiality results on a fine of up to $2,000); Wash. Rev. Code § 26.44.030(9); W. Va. Code Ann. § 49-5-101(a), (f); Wis. Stat. §48.981(7)(a), (e), (f); Wyo. Stat. Ann. § 14-3-214(a).

criminal penalties for unauthorized disclosure of such information.[2]  Colorado has a compelling state interest in protecting the confidential information of children, families, and reporting parties in the child welfare system, as well as in fulfilling its child welfare mandate from the state and federal government.  Section 19-1-307 is narrowly tailored to meet these interests and is neither vague nor overbroad.

Because § 19-1-307 withstands strict scrutiny, as a matter of law, summary judgment should be awarded in favor of the Department.

## STATEMENT OF UNDISPUTED FACTS

### I.   Background and Procedural History

In January 2019, Ms. Peck represented a mother in a dependency and neglect matter before the Denver Juvenile Court.  ECF 60, ¶ 33.  Ms. Peck provided an interview to a Denver weekly newspaper, Westword, about her representation in that case.  ECF 60, ¶ 34.

On January 18, 2019, the Denver Juvenile Court Magistrate presiding over the dependency and neglect case issued an Order stating "[d]isclosure of identifying information in a dependency or neglect proceeding is a criminal offense pursuant to § 19-1-307(1)(b)."  ECF 24-3.  The Court further noted, "any identifying information pertaining to this dependency and neglect proceeding shall be kept confidential in accordance with § 19-1-307(1)(a) and § 19-1-303." *Id.*  Neither the Denver Juvenile

---

[2] Delaware, Idaho, Indiana, Minnesota, and Vermont do not criminally penalize unauthorized disclosure of protected child abuse and neglect information.

Court, the City of Denver, the Denver District Attorney, nor any other state entity took any further action against Ms. Peck in response to her disclosures.  ECF 60, ¶¶ 36, 39, 42, 44, 46, 47, 49, 50.

Nearly a year later, on December 9, 2019, Ms. Peck filed the above captioned matter in this Court challenging the facial constitutionality of § 19-1-307(1) and (4).  ECF 1, ¶ 3.  The parties have filed a Joint Statement of Stipulated Facts for the Court's consideration in anticipation of filing cross-motions for summary judgement in this case.  ECF 60.

## II.   Relevant Statutes

Ms. Peck challenges both the confidentiality provisions and penalties for disclosure of confidential information set forth within § 19-1-307.  *See, e.g.,* ECF 24, ¶ 3.  A review of § 19-1-307, exceptions to the general confidentiality provisions of § 19-1-307, and the federal laws to which they are related provides context for why Ms. Peck's action lacks merit.

### A.   Colorado Statutes

Section 19-1-307(1)(a) provides that "reports of child abuse or neglect and the name and address of any child, family, or informant or any other identifying information contained in such reports shall be confidential and shall not be public information," unless a statutory exception to confidentiality applies.

Colorado law provides for no less than twenty-nine (29) statutory exceptions to the general prohibition on disclosure set forth in § 19-1-307(1)(a).  § 19-1-307(2).

Persons and agencies who shall have access to child abuse or neglect records include, but are not limited to: law enforcement; citizen review panels; physicians treating a suspected abuse or neglect victim; mental health professionals treating an abuse or neglect victim or their family member; the alleged victim; parents or guardians of a child victim; mandatory reporters; state agencies providing services to the child or family; agencies reviewing applications for licensure to operate certain entities that work closely with children; and the child protection ombudsman. *Id.*

Section 19-1-303(1), C.R.S. (2019) also allows for the exchange and use of child abuse and neglect information "to the extent necessary for the acquisition, provision, oversight, or referral of services and support with the judicial department or any other agency or individual. . . that performs duties and functions under [Title 19] with respect to [juvenile delinquency or dependency and neglect cases]." To receive information, the recipient "shall have a need to know for purposes of investigations and case management in the provision of services or administration of their respective programs." *Id.*

In addition to the specifically enumerated exceptions to confidentiality in § 19-1-307(2) and the exchange of information permitted by § 19-1-303, § 19-1-307(1)(b) allows a person who wishes to disclose child abuse and neglect reports or identifying information contained therein to request authorization by a court for good cause. In circumstances not specifically addressed by statute, the court is in

the best position to analyze facts on a case-by-case basis and make an informed determination whether good cause supports disclosure.

A person who discloses child abuse and neglect information that is protected by § 19-1-307(1)(a), in the absence of any circumstances specified in § 19-1-307(2) or § 19-1-303 or an authorizing court order, commits a class two petty offense. § 19-1-307(1)(c). A class two petty offense is punishable by a fine of not more than three hundred dollars. If a person "improperly releases" or "willfully permits or encourages the release of data or information contained in the records and reports of child abuse or neglect" and none of the circumstances specified in § 19-1-307(2) or § 19-1-303 apply, the disclosure constitutes a class one misdemeanor. § 19-1-307(4). A class one misdemeanor is punishable by six to eighteen months imprisonment, or a fine of five hundred to five thousand dollars, or both. § 18-1.3-501(1)(a), C.R.S. (2019).

B. CAPTA

Section 19-1-307 is closely related to CAPTA, which provides federal grant funding to states for child abuse prevention, assessment, investigation, and treatment activities. 42 U.S.C. § 5106(a)-(b). ECF 60, ¶ 27.[3] To qualify for CAPTA

---

[3] It appears the parties' stipulation cites to 42 U.S.C. § 5116(a)-(b), which provides for CAPTA grants to support community-based efforts for child abuse and neglect prevention. While this is one critical type of CAPTA funding, the state also receives development and operation grants to improve its child protective services systems under 42 U.S.C. § 5106a.

grant funding, a state must submit a state plan for federal approval which includes

a certification from its Governor that:

> the State has in effect and is enforcing a State law, or has
> in effect a statewide program, relating to child abuse and
> neglect that includes…methods to preserve
> the confidentiality of all records in order to protect the
> rights of the child and the child's parents or guardian,
> including requirements ensuring that reports and records
> made and maintained pursuant to the purposes of this
> ACT…shall only be made available to statutorily
> designated interested persons, entities, and agencies.

42 U.S.C. §5106a(b)(2)(B)(viii).  ECF 60, ¶ 29.  Section 19-1-307 is Colorado's law

that satisfies this condition.  *Id.*  The Department submits its state plan annually in

order to receive grant funds.  *Id.*

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine dispute of any

material fact and a moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656-657 (2014).  The moving party has

the initial burden to show "that there is an absence of evidence to support the

nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A court

views the evidence in the light most favorable to the non-moving party.  *Garrett v.*

*Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

Ms. Peck, as the plaintiff invoking federal jurisdiction, has the burden of

establishing standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Specifically, on a motion for summary judgment, "the plaintiff must prove the existence of standing." *Hinkson v. Pfeiderer*, 729 F.2d 697, 700 n.5 (10th Cir. 1984).

ARGUMENT

I.      Ms. Peck lacks standing to bring this action because she has not demonstrated an injury in fact.

Ms. Peck lacks standing to challenge the constitutionality of § 19-1-307. Accordingly, her case should be dismissed.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const., art. III, § 2.  To establish Article III standing, the plaintiff must show, among other requirements, that she has suffered an injury in fact. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).

A plaintiff cannot satisfy the injury-in-fact requirement for a prior restraint claim, like the claim Ms. Peck makes here, by merely alleging that the restraint has a subjective chilling effect on her speech or association.  *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006).  Rather, the Tenth Circuit Court of Appeals employs a three-part test to determine the injury-in-fact requirement for plaintiffs seeking pre-enforcement relief based on a chilling effect on their speech. *Aptive Envtl., LLC v. Town of Castle Rock, Colo.*, 959 F.3d 961, 974 (10th Cir. 2020) (quoting *Walker*, 450 F.3d at 1086).  A plaintiff must present:

> (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; *and* (3) a plausible claim that they presently have no intention to

> do so because of a credible threat that the statute will be
> enforced.

*Id.* at 974-975 (emphasis added).  Ms. Peck cannot establish the second and third requirements of this test.

Ms. Peck makes no claim that she has any present desire to engage in speech prohibited by § 19-1-307(1)(a).  While Ms. Peck states she desires "*in the future* to make public statements, including through the press, calling out public officials and public employees when they have issued materially false or improper reports concerning [her] clients," this desire is speculative and conditional.  ECF 55, ¶ 11 (emphasis added).  Ms. Peck's future desire to make statements prohibited by § 19-1-307(1)(a) depends not only on her learning information the statute protects from disclosure regarding a future, prospective client but her also unilaterally deeming the information to be "materially false or improper."  *Id.*  These conditions may never occur.  *Cf. Aptive Envmtl. LLC*, 959 F.2d at 966, 975 (plaintiff company showed present desire to engage in solicitation prohibited by town curfew by averments that salespeople would normally stay out after curfew and revenue had decreased by the company observing curfew).  Accordingly, Ms. Peck has not demonstrated she presently wishes to engage in speech § 19-1-307 prohibits.

Finally, on the third requirement, Ms. Peck has not made a plausible claim that she currently wishes to disclose information protected by § 19-1-307 but cannot because of a credible threat that the statute will be enforced against her.  While Ms. Peck notes that the presiding juvenile court magistrate issued an order prohibiting

her from disclosing confidential information, she concedes that she has not been threatened with prosecution under § 19-1-307.  ECF 60, ¶¶ 39, 42, 44, 46-47, 49, 50. While past enforcement against the same conduct a plaintiff wishes to engage in constitutes "good evidence that the threat of enforcement is not 'chimerical,'" Ms. Peck has not presented any evidence of past enforcement of the criminal subsections of § 19-1-307.  *Susan B. Anthony List*, 573 U.S. at 164 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

"When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible they do not allege a dispute susceptible to resolution by a federal court." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298–99, (1979) (internal quotation marks omitted); *cf. Susan B. Anthony List*, 573 U.S. at 164 (where enforcement proceedings are not a rare occurrence, the threat of enforcement may be deemed credible).  Ms. Peck has not claimed that she has been threatened with prosecution, that prosecution is likely, or alleged any facts supporting a conclusion that prosecution is possible at this time.

Because Ms. Peck has not met her burden of establishing the second and third factors required to show an injury in fact, she lacks standing to bring her facial pre-enforcement challenge to § 19-1-307.  *See Aptive*, 959 F.3d at 974-975.

II.     Section 19-1-307 withstands strict scrutiny and is constitutional.

Regardless of Ms. Peck's standing or lack thereof, § 19-1-307 does not violate the First Amendment.  Unless an exception applies, the First Amendment prohibits the enactment of laws "abridging the freedom of speech."  U.S. Const., Amdt. 1.

The First Amendment has historically allowed content-based restrictions on speech in certain well-defined and narrowly limited areas.  *United States v. Stevens*, 559 U.S. 460, 468-469 (2020) (examples include obscenity, defamation, fraud, incitement, and speech integral to criminal conduct).  "[A] universal and long-established tradition of prohibiting certain conduct" such as certain forms of speech, "creates a strong presumption that the prohibition is constitutional."  *United States v. Brune*, 767 F.3d 1009, 1018 (10th Cir. 2014) (quoting *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 121 (2011)) (internal quotation marks omitted).  While laws that regulate speech are disfavored, even content-based restrictions on speech must be upheld if they withstand strict scrutiny review.  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Under strict scrutiny review, a restriction on speech may be justified if it is narrowly tailored to serve a compelling state interest.  *Id.; see also Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1287 (D. Colo. 2015).  The government bears the burden of demonstrating that a content-based restriction passes this analysis.  *Reed*, 576 U.S. at 171.  Section 19-1-307 withstands such scrutiny.

A. Colorado has a compelling state interest in protecting the confidentiality
of child abuse and neglect records.

Colorado has a compelling interest in protecting the confidentiality of records

and reports of child abuse and neglect and any identifying information contained

therein.  Indeed, this protection furthers the state's mandate to protect children and

to investigate alleged child abuse and neglect.

Laws in all fifty states establish a universal and long-established tradition of

protecting information contained in reports and records of child abuse and neglect.[4]

See Brune, 767 F.3d at 1018.  Forty-five of those states have enacted enforcement

provisions that impose criminal penalties for unauthorized disclosure that are

similar to those found in §§ 19-1-307(1) and (4).[5]

The United States Supreme Court has held that the state's interest in

protecting child abuse and neglect records is not only compelling, but that, even

when weighed against other significant constitutional interests, the state's interest

prevailed.  Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987).  In Ritchie, a criminal

defendant sought the local child protection agency's investigation records related to

his criminal charges.  Id. at 43.  The defendant argued that his Sixth Amendment

Confrontation Clause rights were violated by the child protection agency's failure to

disclose the records.  Id. at 45.  Like § 19-1-307, a Pennsylvania state statute

provided that all reports and information obtained in such a child protection

---

[4] See FN 1.
[5] See FN 1 and 2.

13

investigation were confidential, subject to specific statutory exceptions.  *Id.* at 43-44.  The Supreme Court concluded that disclosing child abuse investigation records to criminal defendants could adversely affect the state's "efforts to uncover and treat abuse."  *Id.* at 60.  The Supreme Court explained:

> Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim.  A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent.  It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality.  Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected.  Recognizing this, the Commonwealth—like all other States—has made a commendable effort to assure victims and witnesses that they may speak to the [Children and Youth Services] counselors without fear of general disclosure.  The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence.  Neither precedent nor common sense requires such a result.

*Id.* at 60-61.  The Supreme Court concluded that the defendant's right to a fair trial was sufficiently protected by the trial court conducting an in camera review of the child protection records and disclosure was not required.  *Id.* at 59.

The Supreme Court's rationale in *Ritchie* regarding the state's compelling interest endures today.  First, confidentiality remains vital to the child abuse and neglect reporting and investigation process, which, in itself, constitutes a crucial state interest.  *See Griffin v. Strong*, 983 F.2d 1544, 1548 (10th Cir. 1993) ("The

state has a traditional and transcendent interest in protecting children from abuse…."); *Gonzales v. Cty. Ct. of Arapahoe*, 2020 COA 104, ¶ 60 (the state has a compelling interest in protecting children and ending child abuse.)  Confidentiality encourages reporting of child abuse and neglect and protects reporting parties from identification.  ECF 60, ¶ 52.  Confidentiality shields children and their families from stigma and retraumatization.  ECF 58, ¶ 16-17; ECF 60, ¶ 53.  Confidentiality also provides privacy for a suspected abuser after an allegation is made until a thorough investigation can be conducted and the county Department of Human Services determines whether the allegation is substantiated.  ECF 58, ¶ 20.  Without confidentiality, it is likely that the total number of referrals for child abuse and neglect made to the state will significantly decrease and negatively impact the safety of children in Colorado.  ECF 59, ¶19.

Second, confidentiality enables the Department to provide ongoing support to children and families involved in child welfare investigations.  Confidentiality facilitates a child's access to safe and effective treatment by allowing children and families to be frank and forthright about intimate and sensitive details of their lives when giving information to caseworkers and treatment providers.  ECF 58, ¶ 19.  Similarly to data privacy laws such as the Health Insurance Portability and Accountability Act (HIPAA, protecting medical and mental health care information) and 42 C.F.R. Part 2 (protecting substance abuse treatment information), § 19-1-307 allows children and families to provide their information knowing it will be

protected from disclosure.  Effective rehabilitative services from child welfare agencies are essential in helping families remain intact and in creating safe home environments.  ECF 58, ¶ 22-23.  This is especially true in court-involved cases with children under the age of 6 which proceed under an expedited time frame.  *Id.; see* § 19-3-104, C.R.S. (2019).

Third, confidentiality increases the reliability of information families and children provide to caseworkers.  ECF 58, ¶ 25.  In turn, this increases a caseworker's confidence in the information used to substantiate a finding or make treatment and therapeutic services recommendations for a family.  ECF 58, ¶¶ 25.

Finally, in order to receive CAPTA funding, CAPTA requires that a state file a plan with the federal Administration of Children and Families every five years and provide annual updates, including a certification that the state has a law or program to preserve the confidentiality of records, subject to specific exceptions.  42 U.S.C. § 5106a(b)(2)(B)(viii); ECF 59, ¶ 12.  The criminal penalties set forth in § 19-1-307(1)(c) and 19-1-307(4) are the mechanism that allows the state to enforce the confidentiality requirement in § 19-1-307(1)(a).  For the most recent grant period, Colorado received $1.5 million in CAPTA funds.  ECF 59, ¶ 16.  Colorado also received $290,000 in Children's Justice Act (CJA) funding, which is contingent on CAPTA eligibility and approval.  ECF 59, ¶ 18.

If § 19-1-307 is found to be unconstitutional, the Department must report that substantive change in state law to the Administration for Children and

Families.  ECF 59, ¶15.  Colorado would likely lose CAPTA funding and related CJA funding because Colorado would no longer satisfy the grant conditions.  ECF 59, ¶ 15 and 17.  Without those funds, the Department would need to make significant cuts to its staff, including those who provide services for child welfare and substance abuse exposed newborns, and employees who oversee child abuse and neglect referrals and assessments.  ECF 59, ¶ 17.

The Department would also need to cut funding for statewide programming supporting the counties for secondary trauma services, forensic interviewer training, expert consultations with child welfare pediatricians and toxicology experts, programs that support kinship placement, and outcome improvement research.  *Id.*  The Department would no longer have funding for its collaborative efforts with other state agencies such as the Colorado Judicial Department, Office of Respondent Parent Counsel, Office of the Child Representative, and the Court Improvement Program.  *Id.*  The Department would also lose funding that currently supports collaboration between child welfare and the judicial system, including Child Advocacy Centers and county attorney training.  ECF 59, ¶ 18.

These child protection and funding considerations establish Colorado's compelling interest, which the confidentiality protections under § 19-1-307 further.

B.  <u>Section 19-1-307 is narrowly tailored to serve the state's compelling</u>
<u>interest.</u>

Section 19-1-307 is narrowly tailored to serve the state's compelling interest in preserving the confidentiality of child abuse and neglect records and its related interest in investigating and preventing child abuse and neglect.

The First Amendment requires that a law be narrowly tailored, not perfectly tailored.  *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454, (2015).  "[A] content-based restriction is narrowly tailored only if it is the least restrictive means of achieving the government's compelling objective."  *Verlo v. Martinez*, 820 F.3d 1113, 1134 (10th Cir. 2016); *see United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 813, (2000).  This standard is meant to ensure that speech is restricted no further than necessary to achieve the state's compelling interest and to ensure that legitimate speech is not chilled or punished.  *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004).  The test does not begin with the question whether the challenged restriction has some ability to further the state's legitimate interest; instead, "the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives."  *Id.*

Prohibiting disclosure of identifying information of children, families, and other individuals in child abuse and neglect records is the least restrictive means of achieving the state's compelling interest in maintaining confidentiality of those records.  Once names or identifying information of victims and their families are disclosed to the public, especially through the media, the resulting harm to children

and their families can be long-lasting and severe.  ECF 58, ¶ 16.  The internet age has made it possible for disclosed information to survive indefinitely.  *Id.*  In turn, it is challenging, if not impossible, to mitigate harmful disclosure after the fact.  *Id.* Maintaining the privacy of an abused or neglected child and the child's family during an investigation in the days and years thereafter is critical to their recovery and treatment.  ECF 58, ¶ 17.  There are no means short of a prohibition on disclosure of such sensitive information that can adequately protect children and families while allowing the Department and the counties to effectively perform their duties to protect child welfare.

The long-lasting and irreversible harm of disclosing child abuse or neglect records warrants the imposition of criminal penalties as an enforcement mechanism.  The possibility of a criminal prosecution, which could result in a conviction, payment of a criminal fine, or possibly even jail time, has a commensurately long-lasting and irreversible effect that is proportionate to the impact of disclosing child abuse or neglect information.  *See* §§ 19-1-307(1)(c), (4); 18-1.3-501(1).  While a civil fine may be financially burdensome for some, civil fines have little impact on those who are indigent or judgment proof due to insolvency or bankruptcy.  Thus, the Colorado legislature has decided civil penalties are not a strong enough deterrent for the type of harm from disclosure that § 19-1-307 seeks to prevent.

Imposition of criminal penalties, including fines and even jail time, for prohibited disclosure of confidential, highly sensitive individual information has precedent in other data privacy laws such as the HIPAA and 42 C.F.R. Part 2. *See* 42 U.S.C. § 1320d-6; 42 U.S.C. § 290dd-2(f); 42 C.F.R. § 2.3. The protection of individuals' healthcare and substance abuse treatment information is paramount to foster frank disclosure between healthcare providers and patients, effective treatment, and preventing stigma. Disclosure of such information can be irrevocably harmful. Thus, criminal penalties are a remedy that is narrowly tailored to deter and penalize such disclosure. Child abuse and neglect information is similarly sensitive and unauthorized disclosure carries a tremendous risk of harm. Accordingly, the criminal penalty provisions of § 19-1-307 are narrowly tailored to effectuate the state's compelling interests in preserving the confidentiality of child abuse and neglect information and investigating and preventing child abuse and neglect.

C.      Section 19-1-307 is not overbroad.

Section 19-1-307 is not overbroad as it does not punish a substantial amount of protected speech in relation to its plainly legitimate sweep.

"In the First Amendment context … a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Stevens*, 559 U.S. at 473 (*quoting Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449,

n.6 (2008)).  The first step in analyzing whether a statute is overly broad is to construe the challenged statute to determine the scope of its application.  *Id.* at 474. Next, the courts consider whether a substantial amount of constitutional speech is implicated, particularly when weighed against the statute's legitimate application to easily identifiable and constitutionally proscribable conduct.  *United States v. Brune*, 767 F.3d 1009, 1019 (10th Cir. 2014).  Application of the overbreadth doctrine is "manifestly, strong medicine" and it "has been employed . . . sparingly and only as a last resort."  *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

Section 19-1-307(1)(a) only prohibits speech that includes "reports of child abuse or neglect and the name and address of any child, family, informant or any other identifying information contained in such reports."  The reports and identifying information contained therein are inherently tied to the Department's functions of investigating and preventing child abuse and providing rehabilitative services to children and families.  Because the prohibition articulated in § 19-1-307(1)(a) is narrowly drawn to protect child abuse and neglect reports and identifying information, there is no speech that would fall under the statute's scope that would not also be closely related to the prohibition's legitimate application.

Section 19-1-307(2) and § 19-1-303 enumerate dozens of exceptions to the prohibition on speech set forth in § 19-1-307 regarding child abuse and neglect records.  Ms. Peck wishes, in the future, to "make public statements, including through the press, calling out" allegedly delinquent "public officials and public

employees." ECF 55, ¶ 11. There are numerous potential avenues of permitted speech that Ms. Peck has not utilized where she can freely disclose information, including reporting to: the relevant county department of human services; the Child Protection Ombudsman (§ 19-1-307(2)(u)); the citizen review panels established under § 19-3-211, including the Institutional Abuse Review Team (§ 19-1-307(2)(p)); and the Board of County Commissioners of any county or the City council of any city and county pursuant to Colorado Revised Statutes § 19-3-211 (§ 19-1-307(2)(p)). ECF, ¶ 37.

Given the carefully crafted avenues of speech that balance the confidentiality interests the state has in child abuse and neglect reports with the interests persons may have to disclose information, the statute is not overbroad.

D. Section 19-1-307 is not vague.

The criminal penalty provisions of § 19-1-307(1)(c) and (4) are not vague and the plain language of those provisions clearly distinguishes the conduct which triggers different levels of criminal liability.

"A law that . . . satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process." *Vill. of Hoffman Estates*, 455 U.S. 489, 497 (1982). A criminal statute is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S 591, 595 (2015).

Section 19-1-307(1)(c) applies to "any violation" of subsection (1) and does not require that a person who violates the statute do so with any particular intention or mental state.  Punishable by a fine of not more than three hundred dollars, and classified as a petty offense, the plain language describes this offense as one of strict liability.  *See Hoggard v. People*, 465 P.3d 34, ¶ 15 (Colo. 2020).  Commission of this offense clearly requires proof of nothing more than a disclosure not authorized by § 19-1-307(1).

Section 19-1-307(4), in turn, provides that a person who "improperly releases" or "willfully permits or encourages" the release of data or information in child abuse and neglect records to persons not permitted access by statute commits a class one misdemeanor.  Limiting this heightened criminal liability to actions that are improper or willful requires proof that an individual possessed a certain level of mens rea when violating the statute.

Willful conduct is defined in the Colorado Criminal Code.  A person acts "willfully with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.  A person acts "knowingly" or "willfully", with respect to a result of his conduct, "when he is aware that his conduct is practically certain to cause the result."  § 18-1-501(6), C.R.S. (2019).

The meaning of "improper conduct" is found in its common usage.  Black's Law Dictionary defines "improper" as "[i]ncorrect; unsuitable or irregular" or

"[f]raudulent or otherwise wrongful."  Black's Law Dictionary 826 (9th ed. 2009).  It is clear from the legislature's use of different and distinct terms in § 19-1-307(4) that the legislature wished to convey a level of intent above and beyond the mere strict liability violation that occurs, for example, through an inadvertent disclosure. A court must consider the consequences of choosing between two plausible statutory constructions, and if one construction raises constitutional problems, the other construction should prevail.  *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005); *see also St. Vrain School Valley Dist. RE-1J v. A.R.L.*, 2014 CO 33, ¶ 24 (courts assume the legislature makes intentional distinctions in language when crafting statutes, and that distinct terms have different meanings).  Here, the construction of "improper" that is distinct from simply any unauthorized conduct that would be penalized under § 19-1-307(1)(c) avoids the constitutional concern of vagueness and should be employed.

## CONCLUSION

The Department is entitled to summary judgment as a matter of law because Ms. Peck lacks standing to bring this action and § 19-1-307 is constitutional. Therefore, this Court should dismiss Ms. Peck's claims and deny her request for attorney fees and costs associated with this action.

Dated this 19th day of August, 2020.

Respectfully submitted,

PHILIP WEISER
Colorado Attorney General

s/ Bianca E. Miyata
Bianca E. Miyata
Leeah B. Lechuga
Aaron J. Pratt
Anita M. Schutte
Office of the Attorney General
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6159
Facsimile: (720) 508-6041
leeah.lechuga@coag.gov
bianca.miyata@coag.gov
aaron.pratt@coag.gov
anita.schutte@coag.gov

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 19th day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| David A. Lane, Esq. | Andrew D. Ringel, Esq. | Robert A. Wolf, Esq. |
|---|---|---|
| Thomas B. Kelley, Esq. | Kendra Smith, Esq. | Melanie Lewis, Esq. |
| dlane@kln-law.com | ringela@hallevans.com | Robert.wolf@denvergov.org |
| tkelley@kln-law.com | smithk@hallevans.com | Melanie.lewis@denvergov.org |
| Counsel for Plaintiff | Counsel for Beth McCann | Counsel for City and County of Denver |

/s/ Kimberly Daley