IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03450-RBJ

JESSICA PECK,

     Plaintiff,

v.

MICHELLE BARNES, in her official capacity as Executive Director of the Colorado
Department of Human Services, and;
BETH McCANN; in her official capacity as the District Attorney of the Second Judicial
District, State of Colorado,

     Defendants.

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

     Plaintiff, pursuant to F.R.C.P. 56, moves this Honorable Court for a summary judgment in her favor declaring that the criminal prohibitions of §19-1-307( (1)(c) and (4), C.R.S., are unconstitutional insofar as they prohibit Plaintiff and others from uttering information contained in child abuse and records and reports that is relevant to the performance of officials charged with protecting children and families, and enjoining the enforcement of those laws.

### I.     INTRODUCTION

     The State of Colorado recognizes the public need to protect our children from harm. To that end, a social services bureaucracy is empowered to enter family homes and investigate and remedy suspected child abuse or neglect that might be occurring there. Child protection officials perform valuable work in support of that mission, but, in an unacceptable number of cases, fail in ensuring the safety of children and the rights of family members. The work of child protection agencies is kept secret from the public in the interest of protection of children, with the result that

official lapses elude public scrutiny. That result is enabled by Colorado laws that criminalize disclosure of any information contained in the only direct record of official conduct that affects the welfare of children and families, even when the disclosure is limited to calling out official lapses, without disclosing identities of children, family members or informants. Those laws abridge the First Amendment rights of parents, their attorneys, the news media and other would-be speakers who lawfully come into possession of information contained in child abuse records and reports. Plaintiff brings this action seeking declaratory and injunctive relief under the Civil Rights Act, 42 U.S.C. § 1983 to redress her actual injury in the form the substantial chilling effect of the criminal prohibitions of §307(1)(c) and (4) upon her free exercise of First Amendment rights.

## II.    FACTUAL AND LEGAL BACKGROUND

### A.    Plaintiff's Circumstances.

1.     Plaintiff, Jessica Peck ("Ms. Peck") is a private citizen and attorney who represents family members in investigations of suspected child abuse or neglect by Colorado local departments of human services (referred to herein and in Title 19 as "County Departments," see §19-1-103(32)). (Decl. of Jessica Peck ("Peck Decl.") ECF 55 ¶2.)

2.     In her work, Ms. Peck regularly and lawfully comes into possession of records and reports of County Department investigations of suspected child abuse or neglect. (Id. ¶ 5.)

3.     With frequency she deems concerning, Ms. Peck finds that such records and reports show lapses, neglect, or misconduct on the part of the County Department employees ("Social Workers") charged with protection of children and the rights of interested parties in conducting such investigations. (Id. ¶ 10.)

4.     In Ms. Peck's experience, the present legal system, including "citizens review

panel" and "Ombudsman" grievance processes, does not address such apparent lapses or neglect in a timely, efficient, and effective manner. (Id. ¶ 23.)

5.      Ms. Peck desires to call out such lapses, neglect, or misconduct through the news media or through her own resources, and in so doing desires to cite, paraphrase, or quote the records of official conduct contained in records and reports of child abuse. (Id. ¶¶10, 11, 20.)

6.      Under the Colorado Children's Code, Title 19 of C.R.S., all persons, except among a limited circle of officials and officially authorized persons, are forbidden from disclosing any information contained in any report or record of child abuse or neglect upon pain of criminal prosecution resulting in jail time and/or a substantial fine upon conviction. See §307(1)(c) and (4). Joint Statement of Stipulated Facts (ECF 60) ("JSSF") ¶¶ 13-19.)

7.      Ms. Peck believes she faces a credible threat of criminal prosecution under §19-1-307 should she utters words that violate it that could result in not only criminal penalties but also potential suspension or revocation of her license to practice law. (Peck Dec. ¶ 20-22.) Ms. Peck is unwilling to disrespect the rule of law or risk those outcomes. (Id. ¶22.)

**B.      The Colorado Statutory Scheme for Protection of Children from Abuse or Neglect.**

8.      In addressing cases of suspected child abuse or neglect, the work of state and county agencies charged with ensuring appropriate protection is prescribed by Article 3 of Title 19, C.R.S., and confidentiality of reports and records made, received, or kept by those agencies in discharging such duties are governed by Article 1, § 307.

9.      Regulations promulgated by the Colorado Department of Human Services (of which Defendant Barnes is Executive Director) ("State Department") that set forth the duties of the County Departments in conducting investigations of suspected abuse or neglect are codified Colorado Code of Regulations, 12 CCR 2509-7, known as "Volume 7". (JSSF ¶ 31.) Required

3

steps and record keeping in investigations and assessments of a child's circumstances are codified in Volume 7, §§7.100 et seq., Referral and Assessment (Ex. A, attached) and §§7.200 et seq., Program Areas, Case Contacts, and Ongoing Case Requirements (Ex. B, attached). Volume 7, §§7-601 et seq. (Ex. C, attached) addresses, among other things, confidentiality of records.

10.     County Departments are charged with investigating cases of suspected child abuse or neglect. Id., § 19-3-308(4)(a), C.R.S. County Department case workers ("Case Workers") must adhere to investigative steps and mandatory record keeping and reporting as detailed in Volume 7, §§7.100 et seq.) and file most records and reports in the State Automated Case Management System established in 2003 by §19-3-313.5. The same is required of reports and records of "all case contacts with" the subject child or family. (Volume 7 §7.202.1F.4.)

11.     A County Department may initiate a dependency and neglect proceeding that may result in removal of a child from the parental home and termination of parental custody. §19-3-308(4)(b), C.R.S.; see also id. §19-3-501(a) & (b). In such proceedings, Country Department records and reports in the case are filed with and relied upon by the court. (See JSSF ¶¶ 10-11; Peck Decl. ¶¶ 3-4)

12.     §19-307(1) and (4) provide for confidentiality of all such records and reports and impose criminal penalties for unauthorized disclosure of any of the contents of such records:

> (1)(a) Except as otherwise provided in this section and section 19-1-303, reports of child abuse or neglect and the name and address of any child, family, or informant or any other identifying information contained in such reports shall be confidential and shall not be public information.
>
> (b) Disclosure of the name and address of the child and family and other identifying information involved in such reports shall be permitted only when authorized by a court for good cause.  Such disclosure shall not be prohibited when there is a death of a suspected victim of child abuse or neglect and the death becomes a matter of public record or the alleged juvenile offender is or was a victim of abuse or neglect or the suspected or alleged perpetrator becomes the subject of an arrest by a law enforcement agency or the subject of the filing of a formal charge

by a law enforcement agency.

(c) Any person who violates any provision of this subsection (1) is guilty of a class 2 petty offense and, upon conviction thereof, shall be punished by a fine of not more than three hundred dollars.

**** 

(4) Any person who improperly releases or who willfully permits or encourages the release of data or information contained in the records and reports of child abuse or neglect to persons not permitted access to such information by this section or by section 19-1-303 commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S.

13.     §19-3-313.5, C.R.S., prescribes a statewide data base of records and reports required in investigations of suspected child abuse or neglect that is now the State Automated Case Management System (JSSF ¶32), and requires the State Department to promulgate rules governing "the release of information contained in records and reports of child abuse or neglect…to assure compliance with any "state or federal law relating to confidentiality of such records and reports." The rules are to address "[t]he consequences of improper release of information related to" such records and reports. §19-3-313.5(4), C.R.S.

14.     The rules promulgated by the State Department require County Departments to adopt a process for releasing records to family and other interested parties that includes a "[w]arning regarding the sharing of information by the requestor." (Ex. C, Vol. 7, §7.605.24G.) Those rules also contain an advisement of "penalty for unauthorized disclosure" that recites the language of the misdemeanor prohibition of §19-1-307(4), C.R.S. (Id., §7.605.5.)

15.     County Departments differ in the language of the required warning. For example:

(a)     The Denver County Department's warning to access-entitled persons provides that "the client, former client, or his/her attorney will be required to sign a Confidentiality Advisement that informs the client the it is his/her responsibility to safeguard the confidential information in accordance with applicable state and federal law." The advisement forms signed by clients or their attorneys provides, "I understand that the Denver Department of Human Services has no control over information once it has been disclosed to a third party, and cannot protect the

5

information if I release the information to any third parties." (See Peck Decl. ¶9 and Ex. 1.)

(b)     The form used by the Douglas County Department provides under the title, "**Confidentiality Statement,**" **"**The Department requires an Acknowledgment of Confidentiality (see below) to be signed before releasing any record." The form continues, reciting: "C.R.S. 19-1-307(4) Any person who improperly releases or who willfully permits or encourages the release of data or information contained in the records and reports of child abuse or neglect to persons not permitted access to such information by this section or by section 19-1-303 commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501  Please ensure that should you release records, it is in accordance with legal confidentiality guidelines and privilege requirements." (See Peck Decl. ¶10 and Exhibit 2.)

16.     Defendants claim these criminal sanctions are needed to fulfill the requirements for federal grants to fund state programs under the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. §5506a. CAPTA requires that any state grant application contain "an assurance in the form of certification by the Governor of the State that the State has in effect and is enforcing a State law that or has in effect a statewide program…to preserve the confidentiality of all records in order to protect the rights of the child and the child's parents or guardians," and to limit access to child abuse records to categories of officials and agencies and "individuals who are the subject of the report". 42 U.S.C. §5106a(b)(2)(B)(viii). § 19-1-307, C.R.S. is Colorado's law proffered to satisfy this funding condition, and the State Department has annually caused recertification that it will be enforced. (JSSF ¶ 29.)

17.     CAPTA also requires the states to establish multiple "citizen review panels" of members of the community to review "policies, procedures and practices" of state and local child protection agencies and, "where appropriate, specific cases" to "evaluate the extent to which State and local child protection system agencies are effectively discharging their child protection responsibilities…" 42 U.S.C. §5106a(c)(2) and (4)(A). Members of the panels are to be forbidden from disclosing "any identifying information about any specific child protection case" and requires the states to establish a "civil sanction for violation." Id. §5106a(c)(4)(B).

6

18.     Colorado has provided for citizen review panels to hear grievances by any person who believes she has been the victim of misconduct by Case Workers and make recommendations. *See* §19-3-211, C.R.S. The recommendation is accepted or rejected by the head of the County Department and ultimately by the Governing body of the county. Id., §19-3-211(c)(VII) and (d). The process is not open to the public, and the statute declares that "no participant in the process shall divulge or make public any confidential information contained in a report of child abuse or neglect in other case file records to which he or she has been provided access." Id. §19-3-211(1)(f).

19.     In 1975, the legislature required the formation of a "Child Protection Team" by each County Department experiencing a threshold level of cases, now codified in §19-3-308(6), C.R.S.  Each Team is to consist of child welfare and medical professionals, representatives of police agencies and public schools, and ordinary citizens. Id., § 19-1-103(22). The charge of the Teams is to review records and report received, maintained, or kept by County Departments in investigating cases of suspected child abuse or neglect and determine whether there were any lapses in performance by Case Workers in discharging their duties that could have avoided harm to the a child or family and recommend steps for avoiding such outcomes in the future.  *See Gillies v. Schmidt*, 38 Colo. App. 223, 556 P.2d 82, 84 (Colo. App. 1976).

20.     Initially, the Child Protection Teams conducted their meetings in private, in deference to the criminal sanctions of what is now §307(4*). Gillies* 556 P. 2d at 84.

21.     A newspaper sued Denver Child Protection Team to challenge that secrecy. The court found that the purposes of both Section 307(4) and the Open Meeting Law would be well served if the Child Protection Team discussed suspected lapses in specific cases of child abuse prevention in public without mentioning names or other identifying information of the subjects,

and convened in executive session only when necessary to discuss subject children and families by name or other identifier. The court entered an injunction accordingly. Id at 84-85.

22.    On appeal, the Court of Appeals held that the language of § 19-1-307(4) trumps the Open Meetings Law and forbids any unauthorized disclosure (let alone public discussion) by any person of any information contained in any child abuse record or report. 556 P. 2d at 86.

23.    Shortly thereafter, the legislature amended the statutory charter of the Child Protection Teams to substantially mirror the vacated injunction in *Gillies*. See §19-3-302, 308(6), C.R.S. The Teams are required to convene their meetings in public and to "publicly review the responses of public and private agencies to each reported incident of child abuse or neglect," to "publicly state whether such responses were timely and adequate," and to "publicly report nonidentifying information relating to any inadequate responses, specifically indicating the public or private agencies involved." Id. §19-3-308(6)(f).  They are to go into executive session to "consider identifying details of the case being discussed" and confidential reports of physicians and others, but any recommendation based on the secret session "shall be discussed and formulated at the immediately succeeding public session…without publicly revealing identifying details." Id. §19-3-308(6)(g). Thus, §19-1-307, C.R.S. no longer precludes Child Protection Team members from publicly discussing non-identifying details of specific cases, but still forbids anyone else from doing so.[1]

24.    In 2010, the Colorado General Assembly established the office of Child Protection Ombudsman. The legislative findings recognize the need for an easily accessible and transparent grievance process by which "children, families and others who become involved in

---

[1] In 2017, The General Assembly amended the law to provide that formation of Child Protection Teams would be optional to County Departments, See §§ 10-3-302 &19-3-308 (6), C.R.S..

the child protection system" may "voice their concerns, without fear of reprisal, about the response of the child protection system to children" at risk; and that "[to] improve child protection outcomes and to foster best practices, there must be accountability mechanisms, including review and evaluation of such voiced concerns" by persons who become involved in the system and "the general public", to move policy makers to "formulate systemic changes, where appropriate". §19-3.3-102, C.R.S. The Ombudsman is authorized to investigate (without subpoena power) complaints, mediate, and make recommendations to appropriate agencies and the General Assembly concerning the issues observed. Id. § 19-3.3-103(1)(a)(I). The Ombudsman's records relating to the grievance process are not open to the public, id. §19-3.3-103(1)(a)(I)(B), and the Ombudsman's office is required to "comply with all state and federal laws that govern the state department or a county department with respect to the treatment of confidential information or records and the disclosure of such records". Id. §19-3.3-103(3).

25.     The forgoing policies and legislative findings of the Children's Code reflect recognition by State policy makers of 1) the compelling public interest in the proper performance of the duties charged to Case Workers of protecting the rights of children and families, 2) the existence of an unacceptable level of failure to adequately perform those duties, and 3) the need for public information as to both, consistent with protecting children, families and informants. However the current legislative scheme requires that all public information concerning the job performance of Case Workers be filtered thru government officials or their designees, and, save for Child Protection Teams, forbids public disclosure of the any of the contents of the actual records of official acts, including specific misconduct—even when the would-be discloser is a non-government citizen who has lawfully obtained that information.

**C.     Ms. Peck's Standing to Bring Her Claims.**

26.     In January 2019, Ms. Peck became aware of a report filed by the Denver Social Worker assigned to a dependency and neglect matter pending in /Denver Juvenile Court that fabricated derogatory information concerning the child's mother, Ms. Peck's client. (Peck Decl. ¶ 12).

27.     Ms. Peck gave an interview to a reporter to the weekly newspaper, Westword, in which she discussed her concerns about the case and what she believed to be excesses by the Caseworker involved. (Peck Dec. ¶ 12.) She did not use the child or familiy's names or other identifying information in her statements for the article. (See Peck Decl. ¶ 13 and EFC 24-2 (resulting article in Westword).)

28.     A court hearing was convened in the matter in on January 18, 2019 immediately after publication of the resulting article in Westword. The article was not mentioned during the hearing. (Id. ¶ 13.) Upon conclusion of the hearing, Ms. Peck left the courtroom while the assigned caseworker remained. Before Ms. Peck left the courthouse, Peck was served with an order by the presiding magistrate warning her of criminal penalties for violating §307(1). (Id. ¶ 13-14.) Ms. Peck became aware of similar threats against others. (Id. ¶¶ 15-16.)

29.     Defendant Beth McCann is the District Attorney for the Second Judicial District, comprised of the City and county of Denver.  Her office is responsible for enforcing Sections 307(1)(c) and (4). Ms. McCann's office has not threatened Ms. Peck with prosecution for violation and, indeed, has never undertaken such a prosecution.  However, Ms. McCann's office has no policy limiting the enforcement of those laws (JSSF ¶); indeed, Ms. McCann has affirmed her awareness of the State's commitment under CAPTA that they are and will be enforced, and has embraced that commitment in defense of the constitutionality and enforceability of §307 (1) (c) and (4). See Answer to Amended Complaint of Defendant Beth McCann (ECF 39) ¶3.

30.     Ms. Peck has declared (Peck Decl. ¶¶ 20-21) her reasonable fear of prosecution

should she violate those laws, based on facts before the Court:

> I believe that §307 prohibits my public criticism of government for abuses of its authority by citing, quoting, repeating or paraphrasing information contained in a child abuse report or record, which I believe is essential to the credibility of any criticism I would voice to the public or the press concerning responsible government officials. As a result, my speech has been, and remains, chilled and abridged by the criminal liability provisions of the Children's Code, Section 19-1-307, C.R.S.

> I am aware that: the Colorado Court of Appeals has construed Section 19-1-307(4), C.R.S., to criminalize any public disclosure of any information contained in chile abuse records and report, regardless of whether it identifies a child or family member; that the State of Colorado has committed the State to enforcement of § 19-1-307(1) and (4) as a condition of receipt of federal grant funds; that CDHS Executive Director Barnes has acknowledged that, as a condition of condition this "critical federal funding," Colorado "must have in effect *and enforce* a state law or statewide program that includes methods to preserve the confidentiality of child abuse and neglect reports and records," and that §307 *"is Colorado's law that satisfies that condition"* (See Scheduling Order, EFC  47 at p. 4 (emphasis added); that the  Governor of Colorado has certified to the U. S. Department of Health and Human Services Colorado's commitment to enforcing §307 as required by 42 U.S.C. §5106a(b)(2)(B)(viii), and that CDHS has renewed that certification on an annual basis; that District Attorney McCann has made a similar declaration as to §307(4); that CDHS regulations warn of criminal penalties for violation of 307(4) for release of "data or information related to abuse or neglect contained in the state automation case management system to persons not permitted access to such information," 12 CCR 2509-7.605.5; that some County Departments warn parents and others entitled to access to child abuse record and reports that disclosure unauthorized persons is punishable under §307(4).

## III.    ARGUMENT

### A.    Plaintiff Has Standing to Assert Her Claims Herein Because She Faces a Credible Threat of Prosecution for Uttering Protected Speech.

Defendants claim that Ms. Peck lacks standing to bring her claims because she has not

been criminally prosecuted nor personally threatened with prosecution for violating § 307(1)(c)

or (4) by anyone with authority to prosecute.

The United States Supreme Court has not hesitated to recognize standing of a plaintiff

who would raise a constitutional challenge to a statute even in the absence of any actual threat of

prosecution. *See, Doe v. Bolton*, 410 U.S. 179, 188 (1973) (abortion doctors had standing to challenge Georgia statute criminalizing performing of abortions notwithstanding that no physician "has been prosecuted or threatened with prosecution" for violation because the statute was too recent to be considered moribund); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302-303 (1979) (plaintiffs who attacked a statute limiting statements made in consumer publicity campaigns despite the absence of any penalties levied under that statute because "the State has not disavowed any intention of invoking the criminal penalty provision" against violators); *Virginia v. American Booksellers Ass'n, Inc*., 484 U.S. 383, 392-93 (1988) (booksellers had standing to challenge criminal statute limiting display of adult material in retail stores because "[t]he State has not suggested that the newly enacted law will not be enforced against them.").

Relying on that line of cases, the Tenth Circuit has recognized that in First Amendment challenges like this one "the conflict between a state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III." The "controversy exists not because the state official is himself the source of the injury, but because the official represents the state whose statute is being challenged as the source of the injury." *Wilson v. Strocker*, 819 F.2d 943, 947 (1987).

In a First Amendment challenge to a content-based prohibition of a category of speech a plaintiff wishes to utter, constitutional and prudential limitations on standing to sue are satisfied when (1) the plaintiff "personally has suffered some actual injury as a result of the challenged conduct; (2) the injury can be traced to that conduct; and (3) the injury is likely be addressed by a favorable decision by the court." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).

Peck's injury is that she is and any reasonable person in her position would be chilled

from criticizing official conduct based on information contained in child abuse records and reports as a result of the criminal prohibitions of § 307(1)(c) and (4) and the State's commitment to enforce them.  There is no question that injury would be redressed by a favorable ruling by this court. Nor is there any question that injury is traceable to the State's conduct, regardless of whether the defendants have initiated or threatened prosecution.

The only element of the standing for which any meaningful question could be raised is whether Peck has demonstrated a cognizable injury-in-fact. The answer to that question must be informed by recognition that the preferred position occupied by First Amendment rights "justif[ies] a lessening of prudential limitations on standing;" that "[t]he mere threat of prosecution under the unlawful statute may have a 'chilling' effect on an individual's protected activity;" and that is enough to invoke "society's interest in having the statute challenged." *Ward,* 321 F.3d at 1266-67, quoting *Sec'y of State of Md. V. Joseph H. Munson Co.,* 467 U.S. 947, 956 (1984).

In *Wilson*, the plaintiff was arrested for distributing anonymous campaign literature, the classic First Amended right of the so-called "lone pamphleteer."  The defendant Attorney General responsible for enforcing the law urged that Wilson lacked standing, because he "did not threaten Wilson with enforcement of the statute and allegedly did not intend to enforce the statute against him." 819 F. 2d at 946.  Because Wilson claimed a desire to engage in speech activities that would violate the statute in the future, but refrained from doing so for fear of future prosecution, he had adequately shown not only a "fear criminal of prosecution" that was not "imaginative or wholly speculative," citing *Babbitt v. United Farm Workers Nat'l Union* 415 U.S. 289, 302 (1979), but also "an ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights. 819 F.2d at 946. Notwithstanding the Attorney

General's disclaimer, the Court found both case or controversy and standing based upon Wilson's showing of chilling effect and the mere existence of the statute:

> In sum, we conclude that a plaintiff challenging the constitutionality of a statute has a sufficient adverse legal interest to a state enforcement officer sued in his representative capacity to create a substantial controversy when, as here, the plaintiff shows an appreciable threat of injury flowing directly from that statute. Id. at 947.

Colorado's Court of Appeals has unequivocally held that §307(4) prohibits any public discussion of any information contained in any child abuse report or record even if that occurs without identifying any child or family member and is limited to exposure of lapses on the part of state and local officials responsible for protecting children from abuse or neglect under the Children's Code. *See, Gillies*, 556 P. at 86. As a condition of obtaining federal funds, Executive Director Barnes and her agency responsible for supervising administration of the Children's Code maintain a continuing certification (by the Governor of the State) that the criminal prohibitions of §19-1-307 will be enforced. District Attorney McCann cites that funding condition as a reason why the criminal prohibitions of §19-1-307 are valid and enforceable.

Ms. Peck and the family members she represents are allowed access to child abuse records and reports, but are required by the State to be warned and are warned in writing of criminal penalties for disclosing any content of any such record or report, See Volume 7 §7.605.24G. The State Department's regulations warn against disclosure in the language of §19-1-307(4). (See 7 CCR §7.605.5.) So do County Departments. (Peck Decl. ¶21.)

Ms. Peck was served with a written order by a juvenile court judge warning her under § 307(1)(c) as a result of a news article in which she called out official conduct.[2]  She is aware of

---

[2] The order in question refers to disclosure of "identifying information," but the statute covers any disclosure of any contents of child abuse records and reports, and the article does not show that Ms. Peck "disclosed" identifying information. (See Peck Decl. ¶ 13.).

others who have been threatened for speaking out in a similar manner, and others who refrain from such speech for fear of prosecution. (Peck Dec. ¶ 15-16.) She, like Wilson, desires to disclose the contents of child abuse records and reports when they reveal official excesses or misconduct but fears prosecution should she do so. As a lawyer, she faces loss of her privilege to practice law if convicted. Even more so than in Wilson, the chilling effect for which Peck seeks redress is not "imaginary or wholly speculative" but utterly reasonable, satisfying the "injury-in-fact" requirement.

In *Ward*, 321 F.3d at 1267 the Tenth Circuit fully reaffirmed its holding in Wilson and in particular that when First Amendment rights are at stake that "Plaintiffs may have standing even if they have never been prosecuted or actively threatened with prosecution;" and that a First Amendment plaintiff who faces a credible threat of prosecute suffers from an "'ongoing injury resulting from the *statute's chilling effect* on his desire to exercise his First amendment rights,'" quoting Wilson, 819 F.2d 946 (emphasis added).  Since the state made no clear commitment not to enforce that statute against Ward's free expression activities, the mere existence of the statute was enough to show the chill claimed by Ward was reasonable.

The *Ward* court relied on *Manqual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003), and particularly on its holding that when an existing statute allegedly chills protected speech, the court "will assume a credible threat of prosecution absent compelling contrary evidence" (internal citations and quotations omitted). 321 F.3d at 1269. Absent moribundity of the statute or a permanent state commitment not to enforce it, the bar is cleared by the mere existence of the statute. *See, Mangual*, 317 F.3d at 57; *see also Rhode Island Ass'n of Realtors v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999), directly on point here.

Ms. Peck expects Defendant Barnes to argue that she lacks standing because the article that resulted from her interview with Westword—as opposed to disclosures Ms. Peck made to the reporter for use in the article—violated §19-1-307(1)(c) by identifying the father of the subject child, so the magistrate's order was within the scope of permissible speech regulation. Even if that notion were valid, any person whose is subject to a regulation that attaches to her speech has standing to attack the validity of the regulation under the First Amendment when it covers a substantial amount of protected speech, even if she is not among the group subject to impermissible speech regulation.  As summarized in *United States v. Stephens,* 559 U.S. 460, 473 (2010): "In the First amendment context… a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  If a law substantially burdens protected speech, it matters not whether the challenger's speech is unprotected; she nonetheless has standing to assert the overbreadth to invalidate the law*,* since "the statute's very existence may cause others not before the Court to refrain from constitutionally protected speech." *Am. Booksellers Ass'n,* 484 U.S. at 392-93. *See also*, *Grayned v. City of Rockford*, 408 U.S. 104, 114-15 (1972):

> Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged a particular defendant, he is permitted to raise its vagueness or overbreadth as applied to others***since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights.

**B.      Section 307 Is Subject to Strict Scrutiny Under the First Amendment Because It Is a Content-Based Regulation of Pure Speech**.

The First Amendment to the U.S. Constitution, applicable to the states though the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech or of

the press." Save for limited categories of speech long recognized as unprotected,[3] laws that criminalize speech based upon its content are presumed invalid unless the government shows they are narrowly tailored to serve a compelling state interest. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

A law that is content based on its face is subject to "strict scrutiny regardless of the government's benign motive, content-neutral justifications, or 'lack of animus toward the ideas contained in the regulated speech.'" *Id*. at 165-166. "[I]nnocent motives do not eliminate the danger of censorship presented by a content-based statute, as future governments may one day wield such statutes to suppress disfavored speech." *Id*. at 167.

A prohibition of speech is content based even if not tied to the viewpoint, message, or idea communicated, but instead proscribes a subject matter or topic. As the Court declared in *Reed*,

> Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.
>
> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.

Id. at 163 (internal citations omitted). The Court continued:

> "[I]t is well established that '[t]he First Amendment's hostility to content-based regulation extends not only restrictions based on particular viewpoints, but also to prohibition of public discussion of an entire topic.' *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S 530, 537 S. Ct. 2326, 65 L. Ed. 2d 319 (1980).

---

[3] The categories are incitement of imminent lawless action, obscenity, defamation, speech incidental to criminal conduct, fighting words, true threats, child pornography, fraud, and grave and imminent danger to the nation.  See *U. S. v. Alvarez*, 567 U.S. 709, 717 (2012) (listing categories and citing cases).

*Id.* at 169 *Reed* was recently reaffirmed in *Barr. v. Am. Ass'n of Political Consultants,* __U.S. __, 140 Sup Ct. 2335, 2346-48 (2020).

In this case, the challenged statute contains two criminal prohibitions. The first, § 307(1)(c), creates a petty offense for violating the confidentiality of "reports of child abuse or neglect and the name and address of any child, family or informant or any other identifying information contained" therein. The second and more serious offense is created by § 307(4), which criminalizes anyone who "releases" or abets "the release of data or information contained in records or reports of child abuse or records to persons not permitted access to such information…" The latter is the prohibition stated in Volume 7, §7.605.5 and of which persons allowed access to child abuse records are warned pursuant to §7.605.24G. (Peck Decl. ¶¶ 9, 21.)

§307(1)(c) and (4) are undeniably a content-based regulations of speech defined by topic or subject matter: "Records and reports of child abuse or neglect." The statutory scheme of which the prohibitions are a part, as well as the parties' stipulation, make clear that these records and reports reflect the performance of public official in their duties of protecting children from abuse or neglect in their homes and elsewhere. (JSSF ¶¶11-12.) Either—the prohibited topic consisting of the contents of records and reports of child abuse or that the records and reports by law directly reflect performance of important official functions—is sufficient to place the criminal prohibitions of Sec. 19-1-307 in the category of content-based regulation.

**C.      Section 307 Is Subject to Strict First-Amendment Scrutiny for the Additional and Independent Reason That It Prohibits Speech Consisting of Information Lawfully Obtained About Matters of Public Concern.**

In *Bartnicki v, Vopper*, 532 U.S. 514 (2001), the Court entertained  a First Amendment challenge to the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968) 18 U.S.C. 2511(1)(c), which criminalizes and provides for a civil remedy for

"intentionally disclosing the contents of an electronic communication" when the discloser "knows or has reason to know that the information was obtained" through an illegal overhear of the conversation. 532 U.S. at 520. Vopper had no involvement in the illegal intercept and broke no law in receiving the recording he later broadcast. Id. at 525. However, Vopper was aware that the recording had been obtained through an illegal interception and therefor violated the statute by disclosing it. Id. at 517-18, 520-21.

The Court held that Vopper's disclosure of the recorded overhears, although in violation of the statue, was protected by the First Amendment. The Court invoked the "Daily Mail principle:" When a would-be speaker "lawfully obtains truthful information about a matter of public significance, then state officials may not constitutionally publish publication of the information, absent a need of the highest order." *Smith v. Daily Mail*, 443 U.S. 97, 103 (1979).

In *Daily Mail*, the defendant newspaper published the name of a juvenile charged with shooting and killing a classmate. The West Virginia juvenile code forbade such publication absent prior approval from the juvenile court. 443 U.S. at 98, 100. In striking the law, the Court declared, "A free press cannot be made to rely solely on the sufferance of government to supply it with information," Id. at 104, an observation that applies equally no non-media speakers who would call out official misconduct. "If the information is lawfully obtained, as it was here, the state may not punish its publication except when necessary to further an interest more substantial than is present here." Id. (internal citations omitted).

In this case, the records and reports of child abuse and neglect reflect the official conduct of government agents charged with protecting our children from abuse and neglect. That is undeniably a matter of public concern. Because the speech prohibitions of Section 19-1-307(1)(c) and (4) are content-based, and for the independent reason that they prohibit disclosure

of lawfully obtained information that is of public concern, the law must be held to violate the First Amendment unless it survives the rigor of strict scrutiny.

**D.      The Criminal Prohibitions of Section 19-1-307 Fail Strict Scrutiny.**

Ms. Peck is not before the Court to challenge Colorado's interest in protecting the identities of children, family members, and informants as contained in records of child abuse or neglect from public disclosure.  However, she does challenge the overbreadth of the prohibitions of  § 19-1-307(1)(c) and (4) insofar as they prohibit disclosure of other information contained in such records and reports that does not identify the families and protected informants, and in particular information that exposes official lapses in protecting children and families.

In *Gillies v. Schmidt*, 556 P.2d at 86, the Colorado Court of Appeals has authoritatively construed § 19-1-307(4) to criminalize any communication of any of the contents of such records and reports by any person to anyone outside the limited circle granted access to them. The since amended Children's Code now allows Child Protection Teams to discuss details of specific cases as contained in County Department records and reports without disclosing identifying information, but all others are forbidden from doing so under §307(4). See p. 8, supra.  The Defendants admit that the purpose of §307(1)(c) and (4) is much narrower than the scope if its prohibitions as so construed: to protect the privacy of children and families receiving services from county departments of social services. (JSSF ¶¶13. 28, 53-54). Indeed, that is the expressly limited purpose of CAPTA, when it conditions receipt of grant money on a state adopting a program that includes "methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians…" 42 U.S.C. 5106a(b)(2)(B)(viii).

These grant enabling provisions do not require a criminal prohibition on disclosure, and certainly do not require prohibition of disclosure of information from child abuse records that

does not identify children, family members or informants. Seven states have enacted analogues to §307 that omit any form of penalty, civil or criminal.[4]  Privacy of records can be maintained without criminal sanctions. *Smith v. Daily Mail,* 443 U.S. at 105, citing *Landmark Communications, Inc, v. Virginia,* 435 U.S. 829, 843 (1978). Indeed the only penalty, civil or criminal, required by CAPTA is a civil sanction against members of citizen review panels who disclose confidential information. See supra, ¶ 17 at pp. 6-7.

Undeniably, the blanket ban on speech that repeats information contained in child abuse records and reports cabins a significant category of protected speech, by broad categories of speakers, to an interested mass audience. In First Amendment jurisprudence, the rights of interested listeners are of co-importance with the rights of speakers. *See Citizens United v. FEC,* 558 U.S. 310, 319, 371 (2010); *see also,* Ronnell Anderson Jones, *Press Speakers and First Amendment Rights of Listeners,* 90 Univ. of Colo. L. Rev. 499 (2019). The Court can take notice that failure of responsible officials to properly address dangers to children and families occurs with unacceptable frequency, and that those lapses are of considerable legitimate public interest. http://childfatalities.denverpost.com/#:~:text=Failed%20to%20Death%3A%20An%20Investigative%20Series%20by%20The,were%20known%20to%20social%20services%20before%20their%20deaths  Child abuse records and reports are the record of performance by the officials charged with those important responsibilities. Speech that informs the public about the performance of duties owed by government officials "has been traditionally recognized as lying at the core of the First Amendment." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1035 (1991).

---

[4] AR: A.C.A. §12-18-909; DE: 16 Del. C. §§906, 909; ID: Id. C. §16-1626, 16-1629, 74-105; KA: KRS §620.050; MI: MCLA §722.627; TX: TX. Fam. C. §261-201; VA: V Code Ann. §63.3-1515.

The reach of §19-1-307(1)(c) and (4) is breathtaking. Those criminal prohibitions apply to any person, including newspersons, who comes into possession of information contained in any child abuse record. §19-1-307(4) targets anyone who even "encourages the release" of such information, which would include a newsperson who no more than employs the "standard newsgathering technique" of asking questions of a public official, an activity protected by the First Amendment. *Smith v. Daily Mail*, 443 U.S. at 105.

Even if criminal sanctions were necessary, the State could readily achieve its privacy protection objectives by limiting the bans of §19-1-307(1)(c) and (4) to disclosures of specifically defined categories of information that identifies individuals in need of and entitled to such protection. Although that involves less simplicity than the blanket speech ban now contained in §19-1-307(1)(c) and (4), that manageable complication is insignificant when "judged by the sometimes inconvenient principles of the First Amendment." *U. S. v. Alvarez*, 576 U.S. at 715. "The First Amendment requires that the government show that its chosen restriction of speech is "actually necessary" to serve its interest. *Id*. at 725; there be a direct "causal link" between the restriction imposed and the injury to be prevented. *Id*. at 724. Insofar as §304 prohibits speech that does not identify children, family members and informants that are the subject of child abuse records and reports but is limited to calling out official acts and omissions that may pose danger to such persons, no such link can be shown. Where a less restrictive alternative would serve the Government's purpose, the legislature must make use of it. *Playboy Entm't Group*, 529 U.S. at 803, 813, 816 (2000). The less intrusive alternative need only "likely" achieve the government's objectives. *U. S. v. Alvarez*, 576 U.S. at 729.

The State cannot show the non-viability of a speech ban limited to information that identifies persons entitled to privacy. Indeed, the State has effectively proven just the opposite by

permitting Child Protection Team members to discuss in public the content of child abuse records and without disclosing identifying information. *See* §19-3-308(6)(f) & (g), C.R.S. There is no compelling interest in prohibiting all others who lawfully come into possession of child abuse records from the same form of expression, and the extension of the ban to all such persons reaches considerably more speech than strictly necessary to achieve permissible goals.

Contrary to Defendants' pleaded defenses, the existence of alternative channels of communication through which Peck may voice her grievances--such as the citizens review panels and the office of the Child Protection Ombudsman--is irrelevant when applying strict scrutiny to a content-based restriction on speech. *See ACLU v. Reno*, 521 U.S. 844, 879-880 (1997). Even less availing to the Defendants is the opportunity to seek a Court order approving disclosure for "good cause" pursuant to §307(1)(b). *See Smith v. Daily Mail*, 443 U.S. at 100-01 and 102-03.

§19-1-307(1)(c) and (4) are clearly and substantially overbroad and must be stricken.

**E.     §307 Violates the First Amendment by Its Vagueness**.

The "void for vagueness" doctrine, frequently applied under the Fifth amendment, receives special attention under the First Amendment. When a legislative body prohibits speech, it must not, among other things, leave "uncertainty among speakers" subject the prohibitions as to "just what they mean." *Reno v. ACLU*, 521 U.S. at 870-871. Any such uncertainty "undermines the likelihood that that [the law] has been carefully tailored to [its legislative goal…" *Id*. at 871. Concern about uncertainty is heightened when the prohibition "is a content-based regulation," or when violation may result in "the opprobrium of a criminal conviction." Id. at 871-72. "As a practical matter, this increased deterrent effect, coupled with the risk of discriminatory enforcement, poses greater First Amendment concerns..." *Id*. at 872.

§307(1)(c) and (4) are unconstitutionally vague for failure to provide any notice or guidance to any speaker or any law enforcement authority of which criminal sanction--the class 1 misdemeanor created by §307(4) or the class 2 petty offense created by §307(1)(c)--will applied when and to whom. *See City of Chicago v. Morales*, 527 U.S. 41, 58 (1999).

§ 307(1)(c) is unconstitutionally vague for the following reasons:

(1)      §307(1) declares confidential "reports of child abuse or neglect" and "the name or address or other identifying information contained in such reports."  The term "other identifying information" is not defined. Under Colorado statutory interpretation jurisprudence, that descriptor would be limited to information similar to "name and address". i.e. information directly identifying the child, family member or informant.  See *Daniels v. City of Commerce City,* 988 P.2d 648, 651 (Colo App. 1999). The Defendants apparently would apply it to disclosure that only indirectly identifies a child, such as permitting use of non-identifying information by a newsperson who knows the identity of the father through public information. The absence of any definition of "other identifying information" renders § 307(1) unconstitutionally vague.

(2)      §307(1) provides a "safe harbor" from criminal liability when a child has died, but leaves a speaker attempting to avail herself of that carve-out with no means to discern its parameters, which renders the law unconstitutionally vague. *Gentile*, 501 U.S. at 1049. For example, when there is a "death of a suspected victim of abuse or neglect," may there be disclosure of reports that identify or pertain to other children in the same family?

**F.      Plaintiff Is Entitled to Injunctive Relief.**

The injuries to Ms. Peck and others chilled by §307(1)(c) and (4) are irreparable. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter a declaratory judgment in favor of the Plaintiff and against the Defendants as requested at the beginning of this motion, declaring §19-1-307(1)(c) and (4) to be unconstitutional: and further to enter a permanently injunction prohibiting the Defendants from enforcing those laws.

Respectfully submitted this 19th day of August 2020.

KILLMER, LANE & NEWMAN, LLP

*/s/ Thomas B. Kelley*
David A. Lane
Thomas B. Kelley
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000, (303) 571-1001 - facsimile
dlane@kln-law.com
tkelley@kln-law.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on this 19th day of August 2020 I filed this **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** via CM/ECF, which will generate a Notice of Electronic Filing to the following:

Hall & Evans, L.L.C:
ringela@hallevans.com
smithk@hallevans.com

Office of the Colorado Attorney General:
Leeah.lechuga@coag.gov
bianca.miyata@coag.gov
aaron.pratt@coag.gov
anita.schutte@coag.gov

*/s/ Charlotte Bocquin Scull*
Paralegal

25